# Peotone and Manteno Union Drainage District, etc., v. John Adams.

1. MANDAMUS—*Lies to Compel Drainage Commissioners to Act.*—The writ of mandamus lies to compel drainage commissioners to repair and modify a drainage system within their district so as to provide an outlet of ample capacity, into which the lands in the district may be drained and the owners thereof receive, as far as practicable, the protection and benefit contemplated when the district was organized, and to levy an assessment sufficient to pay the cost of the same.

2. SAME—*Discretion as to Details, no Bar.*—Where it is the duty of public authorities to make improvements, or to keep in repair improvements already made, mandamus will lie to compel them to perform their duty. Nor does the fact that certain incidents and details of the work are left discretionary with the authorities as regards the manner of their execution, render the duty less mandatory, or constitute a bar to relief by mandamus.

3. DRAINAGE COMMISSIONERS—*When Charged with an Infraction of Duty.*—Section 41 of the Farm Drainage Act provides that after the completion of the work the commissioners shall thereafter keep the same in repair; and if they find by reason of error in locating or constructing the ditches, or from other causes, the lands of the district are not drained or protected as contemplated, or some of them receive but partial or no benefit, they shall use the corporate funds of the district to carry out the original purpose, to the end that all lands, so far as practicable, shall receive their proper and equal benefits as contemplated when the lands were classified; and in all such cases, if sufficient funds are not on hand, the commissioners shall make a new tax levy; and charges the commissioners with an imperative duty; and their discretion, if they have any, is not such as bars a mandamus to compel them to act.

Mandamus.—Appeal from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the May term, 1895. Affirmed. Opinion filed December 10, 1895.

## STATEMENT OF THE CASE.

This was a petition for a mandamus to compel the appellants to lower the main ditch and tile in the district, and levy an assessment sufficient to cover the costs of the same, and to afford the petitioner ample drainage for his tile at its connection with the main tile. The petition shows that the district was organized December 17, 1891, and among

other lands embraced in the district was a tract of land belonging to the relator; that the purpose of the organization of the district was for constructing and repairing drains and embankments, etc., for agricultural and sanitary purposes, giving the names of the land owners in the district and a description of the land owned by each; charges that the commissioners employed one John McLean, a civil engineer, to make a plat of the district, together with a profile of the contemplated improvements, and a report of the probable cost of the construction of the drain; that McLean did so, and that thereafter the commissioners, pursuant to the statute, made a graduated scale of the benefits that each tract of the land would receive from the construction of the ditch, denoting the per cent of the benefits from 100 down; that the relator's benefits were classed at eighty. The petition states in a general way the course, direction and length of the said drain, stating the point of its beginning and its outlet, and alleging that the costs as estimated were $2,175, of which the relator paid $199.34; that the land of the relator was low, and alleges before the construction of the said drain, he had drained all his land into a slough at the south end of the tract; that the main line of the Union Drainage District was extended to his south boundary line; was so done for the express purpose of affording him drainage; that the slope or depression of his land was from the north to the south, in the direction of Rock Creek; which is the outlet of the said main tile drain; that the slough at the lower or south end of his land is lower than the surrounding land on either side; that by reason of an error in locating or constructing the drain, the same was not sunk to a sufficient depth to afford a sufficient outlet for the waters from petitioner's land, but that in order that it should be of any value to him the same ought to be sunk deeper than as originally laid for a distance of 1480 feet. A map or profile, marked exhibit "C," with his petition, indicates the character and change necessary to give the petitioner the outlet which in his judgment was proper and right; that it would cost

$150 to make the change, but that for want of money in the
treasury of the district and in order to comply with the re-
quest of the relator, it would be necessary to make an addi-
tional assessment. The petition avers the request of the
relator to make the change by lowering the main tile to
such a depth as he requested, but that they refused and neg-
lected so to do, claiming that the drain having been con-
structed according to the plan and profile of the first survey,
that the commissioners had no right to alter or modify the
same. The answer of appellants admits the substantial
averments of the petition; admits the allegations as to the
fall of petitioner's land, and avers that the outlet of the pe-
titioner's land is three feet four and one-fourth inches in
depth, and had the petitioner, in seeking his connections to
the main outlet or district tile, made the same prudently
and in a farmerlike style, he would have had sufficient
drainage. The answer further avers that the levels and
depths of the district tiles received due and careful consid-
eration by the commissioners before the same was laid, and
that there had been since the laying the same, no change;
that they considered the request of the said petitioner to
deepen the said drain, and adjudged and decided that the drain
was of sufficient depth and properly laid and constructed, and
they submitted to the court, whether the court has power
to compel the said commissioners to exercise their discre-
tion and judgment in the premises differently than what
they did, and submit the question as to the power of the
court on a demurrer to the prayer to the petition, and peti-
tioner's right to a mandamus. The court overruled the de-
murrer to the petition.

A trial was had upon petitioner's motion, and the court
instructed the jury to the effect that the relator had a right
to a verdict, provided he made the proof contained in his
petition, and directed the jury to find upon the hypothe-
sis contained in the instructions for the petitioner, upon the
issue whether petitioner had been furnished a sufficient out-
let. The defendant asked the court to instruct the jury in
substance that the decision of the necessity of the work

claimed by the relator, as to the lowering of the tile requested by him, by the commissioners, was final and conclusive. It was insisted that if the relator had a right to the mandamus on the facts presented in his petition, he failed sufficiently to prove the same to the jury.

HALEY & O'DONNELL and MORRILL SPRAGUE, attorneys for appellant, contended that to entitle a party to a writ of mandamus he must be dispossessed of a clear, legal right to have exercised an office or a franchise, or to have a service performed by the party to whom he seeks to have the writ directed, and no other legal specific remedy to which he can resort to compel the performance of this duty. 14 Am. and Eng. Ency. 94.

It is the settled rule of practice in this State that the petition for a writ of mandamus, taking, as it does, the place of the alternative writ of mandamus, must show on its face a clear right to the relief demanded by setting forth all the material facts. These facts must be alleged in a clear and distinct manner so that the same can be admitted or traversed in the answer. Canal Trustees v. The People, 12 Ill. 248; People v. Hatch, 33 Ill. 9; People v. Glann, 70 Ill. 232; People v. Davis, 93 Ill. 133; People v. Board of Supervisors, 125 Ill. 334.

COWING & YOUNG, attorneys for appellee, contended that when discretion is abused and made to work injustice, it is admissible that it should be controlled by mandamus. Village of Glencoe v. The People, 78 Ill. 382; Dental Examiners v. The People, 123 Ill. 241; 14 Am. & Eng. Ency. 99.

Mandamus is a prerogative writ, designed to afford a summary and specific remedy in those cases where, without it, the party will be subject to serious injustice. It is from its very nature a remedy that can not be hampered by any narrow or technical bounds. The right, coupled with the necessity of such a vindication of it, supports the jurisdiction, and the court, in using its discretion, while careful not to use this writ when it is not essential, will apply it where it is. R. Co. v. Judge, 44 Mich. 479; 14 Am. & Eng. Ency. 91.

Where, under the wording of the statute, municipal authorities are vested with a discretionary power and must exercise their judgment in determining upon the necessity or expediency of making public improvements, or of keeping in repair those already made, mandamus will not lie. High Ex. Legal Rem., Sec. 418–419; People v. Commissioners, 118 Ill. 239.

Mandamus is issued or withheld in the discretion of the court, and the court, in issuing it, will be governed by what seems to be necessary and proper to be done in the premises for the purpose of justice. 14 Am. & Eng. Ency. 97.

Mandamus lies to compel a city to maintain open and closed bridges where such duty is imposed by statute. Ottawa v. People, 48 Ill. 233.

Commissioners of highways may be compelled to remove obstructions from roads. Brokaw v. Commissioners, 130 Ill. 482.

Mandamus will lie upon a proper showing to compel supervisors to furnish county aid in building bridges. Supervisors of Will County v. People, 110 Ill. 511; Supervisors of Macon County v. People, 19 Ill. App. 264; Supervisors of Macon County v. People, 121 Ill. 622.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

We are of the opinion that it sufficiently appears that appellee had necessity for a tile drain on his own land, for near a quarter of a mile, and that the fall was nothing on his land toward the main tile drain, but in that distance the fall was the other way about seven inches. This would show that, by carrying back of a fall the length of his proposed tile ditch, he could not give his tile grade from the upper end sufficient to drain his land without running out at the top of the ground before reaching the upper end; he would not have ample capacity, according to the original intention, for the drainage of the water from his land, comprising about seventy acres. Any one with but little experience would know that, from a reading of the evidence, which we think was clearly sufficient to support the verdict

of the jury. The court ordered the issuing of a peremptory writ of mandamus, and ordered the appellants to repair and modify the drainage system within its district so as to provide an outlet of ample capacity, into which the lands of the said petitioner within said district, and in said petition described, might be drained, and appellee receive, as far as practicable, the protection and benefit to his land contemplated he should receive when the said district was organized, and the lands therein classified, and to take the necessary proceedings according to law to make a new tax levy to provide the necessary funds to make the repairs and modifications of the said drainage district as aforesaid, and awarded cost against the district. The section of the statute under which the relator claims the right to the relief sought is section 41, chapter 42, of the Farm Drainage Act, and is as follows: "After the completion of the work, the commissioners shall thereafter keep the same in repairs, and if they find by reason of error in locating or constructing the ditches, or any of them, or from other causes, the lands of the district are not drained or protected as contemplated, or some of them receive but partial or no benefit, they shall use the corporate funds of the district to carry out the original purpose, to the end that all the lands, so far as practicable, shall receive their proper and equal benefit, as contemplated when the lands were classified. If it be necessary to clear or enlarge natural or artificial channels lying beyond the boundaries of districts, to obtain a proper outlet, commissioners shall use the corporate funds," etc., etc.; "provided, in all such cases, if sufficient funds are not on hand, the commissioners shall make a new tax levy."

There appears to be no dispute between counsel of appellant and appellee as to the law of mandamus as a general principle, but the contention is, as to whether the statute in question confers a discretionary power upon the commissioners to make the changes contemplated by it, or whether they are required and commanded under the statute to make the changes, when the facts really exist calling for the

changes contemplated. It is conceded by both sides, that if the section of the statute in question leaves it a discretionary power with the commissioners whether or not they will act, then a writ of mandamus could not be issued. On the other hand, if it is not discretionary, then it should be. We are of opinion from a reading of the statute that it is the duty of the commissioners; that when the facts actually exist calling for their action that they have no discretion, but must proceed to act. The first clause of the statute requires the commissioners absolutely to keep the work in repair. There is or can be no dispute as to their duty in that respect, nor do they have any discretion; they would not be authorized to say that they had adjudicated the matter and found there were no repairs needed. The second clause uses the words, "if they find by reason of error in location or constructing the ditches or any of them, or from any other causes the lands of the district are not drained or protected as contemplated," etc., "they shall use the corporate funds of the district to carry out the original purpose," etc. We do not think that the word "find" in the connection used is meant by the statute to give the commissioners a discretionary power to determine the facts mentioned, otherwise than the actual state of the facts; that when those facts are called to their attention and they see they are facts, or may see it, that they are bound to act. They are charged with an imperative duty, on a condition and a case prescribed. Their discretion is not such, if they have any, as bars a mandamus. Cases cited, *supra*.

We think that the scope and intention of the statute was to compel the commissioners to do equal justice to all the land owners in the district according to the intention of the original design in forming it, and that was the purpose of the passage of this section.

It is not intended by the statute, in our opinion, to leave it to the arbitrary discretion of the commissioners, as to whether they should carry out the designs of the petitioners in forming the district, but that they were compelled to act within the limit and scope of their office, as laid down by

the statute. In the case at bar it seems plain enough, that appellee would not receive the benefits that it was intended he should receive when his land was classified and taxed, arising through the mistake of the surveyor, or from the fact he failed to take the levels when laying out the main ditch to appellee's south boundary line.

Section 41 of the statute above named seems to be intended to meet just such a case as this. It is laid down by High on Extraordinary Legal Remedies, as follows: " Nor does the fact that certain incidents and details of the work are left discretionary with the authorities as regards the manner of their execution render the duties less mandatory, or constitute a bar to relief by mandamus." High Ex. Legal Rem., sections 413 and 415; Kline v. The People, 31 App. C. R. 302; People v. Commissioners of Highways, 32 App. C. R. 171; County of St. Clair v. The People, 85 Ill. 396; Brokaw v. Commissioners, 130 Ill. 482. In the latter case the commissioners were compelled to remove obstructions from a road in their town. Road commissioners, with the same propriety, as it is here contended, could say that they were the judges as to whether the highways needed repairs, and as to whether obstructions needed removal, but the courts hold the statute mandatory, and that they must keep the roads in repair, when actually needed, with discretion as to the mode. People v. The Supervisors of Macon County, 19 App. 269; 121 Ill. 616; County of St. Clair v. The People, *supra*.

We need not notice other questions raised by counsel in their arguments. In our opinion the verdict of the jury and the decision of the court were right. The judgment of the court below is therefore affirmed.