HARMON G. KREILING *et al.*

*v.*

H. R. NORTRUP *et al.* '

*Opinion filed April 17, 1905.*

1. EVIDENCE—*when admission of improper evidence will not reverse.* Admitting improper or immaterial evidence in a proceeding heard by the court without a jury will not reverse, where there is sufficient, proper and competent evidence to justify the judgment.

2. SAME—*what evidence is not material in mandamus to compel deepening of drainage ditch.* In a *mandamus* proceeding to compel drainage commissioners to widen and deepen a ditch' so as to provide an outlet of sufficient capacity to drain the land of the petitioners, as was intended by the organization of the district, evidence as to the value of petitioners' land before and after the construction of the drainage system and effect of the system upon the sanitary condition of the land is immaterial.

3. INSTRUCTIONS—*specific grounds should be pointed out to show wherein refusal was error.* A mere general assertion that the refusal of certain instructions was error, without pointing out the specific grounds upon which the alleged error is based, does not require a court of review to search the record for reasons upon which to condemn the ruling of the trial court.

4. DRAINAGE—*when right of land owners to additional drainage is not barred.* The right of land owners to compel drainage commissioners to supply their land with the adequate drainage intended by the organization of the district is not barred by *laches* or limitation, where the evidence shows they were continually demanding relief and the commissioners were recognizing the justice of the demand and taking steps to provide additional drainage.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Mason county; the Hon. HARRY HIGBEE, Judge, presiding.

At the August term, 1901, of the circuit court of Mason county, the defendants in error filed a petition for a writ of *mandamus* to compel the plaintiffs in error, as commissioners of the Mason and Tazewell special drainage district, to

alter, repair and modify said drainage system so as to provide an outlet of ample capacity to convey the water from the petitioners' lands. The following facts appear from the allegations of the petition:

Mason and Tazewell special drainage district was duly organized for agricultural and sanitary purposes on December 12, 1882, consisting of 42,000 acres of land commonly known as swamp and overflowed lands, having no actual outlet. The main drain of said district consisted of a large open ditch constructed in the center of the district with a dredge boat and extending to a point near the north-west corner of section 30, where it intersected an old ditch known as Quiver ditch, which it followed until it intersected Quiver creek. The district also had numerous other smaller drains. The lands of petitioners are located in what is known as Red Oak lake, a depression or swamp, and they were drained by a lateral ditch called Red Oak ditch, which it was supposed, at the time of its construction, was of sufficient size and depth to drain their lands. In the year 1886 the work on the district was completed and the main ditch was then of ample capacity to carry off the water, as were all of the laterals except the one which drained Red Oak lake. This lateral, by reason of an error in its location and construction, was too small and of insufficient depth to afford an outlet for the water on petitioners' lands. While there is sufficient fall to construct a ditch of proper depth to drain said lands, yet the upper end or outlet is so shallow that it fails to furnish a sufficient escape for the water, but if the said ditch is deepened at the upper end, with uniform fall from there into the main ditch, it will be sufficient to drain said lands. After the organization of the district various assessments were made against the lands benefited, aggregating the sum of $300,000, for the purpose of properly constructing the said ditches in such a manner as to completely fulfill the purpose of the organization of the district. About $10,000 of the total amount assessed was levied against the lands of peti-

tioners and paid by them. All of the lands of said district have received benefits far in excess of the amount of the several assessments except the lands of the petitioners. There is no money in the treasury of the said district with which to remodel said Red Oak ditch, and petitioners have many times requested the commissioners and their predecessors to alter, repair and deepen the said ditch, which they have wholly refused and neglected to do. The prayer is for a writ of *mandamus* commanding said commissioners to forthwith alter, repair and modify said Red Oak ditch so as to provide an outlet of ample capacity, to the end that petitioners' land shall receive the protection and benefit contemplated when said district was organized.

The defendants filed their answer to the petition, and the petitioners filed sixteen replications to the answer. Upon issue being joined a jury was waived, and the court, upon a hearing, entered judgment against defendants, granting the writ of *mandamus* as prayed. An appeal was prosecuted to the Appellate Court, where the judgment was affirmed, and a writ of error has been sued out from this court.

WILLIAM A. POTTS, and JESSE BLACK, Jr., for plaintiffs in error.

LYMAN LACEY, Jr., for defendants in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

It is first insisted that the court erred in admitting evidence as to the condition of the ditch at the time the petition was filed and three weeks prior thereto; of certain conversations with the commissioners of the district with reference to their duty in dealing with petitioners' lands in reclaiming them and recognizing the right of the land owners to the relief asked; also as to a conversation between the commissioners of the district and the commissioners of the Central drainage district with reference to taking the water through

the latter district. It is also insisted that the court errone-
ously refused to admit evidence as to the cash market value
of petitioners' lands prior to the completion of the district
and at the present time, and the effect of the drainage on the
present sanitary condition of the land as compared with the
condition prior to the construction of the ditch. It will not
be necessary to consider each of these points separately.
They naturally resolve themselves into classes.

The case was heard by the court without a jury, and as
to the evidence admitted to which objection is made, the
rule is, that no improper or immaterial evidence will be pre-
sumed to have influenced the court in reaching a decision
where there is sufficient proper evidence to justify the judg-
ment. (*Merchant's Despatch Transportation Co.* v. *Joest-
ing,* 89 Ill. 152.) There is sufficient proper evidence to
justify the judgment, and therefore plaintiffs in error have
no cause to complain.

As to the evidence excluded, we do not see how it was
in any way material to the question at issue. The question
was not whether the establishing of the drainage district had
increased or decreased the value of the land or whether it
had improved its sanitary condition. Both of these condi-
tions might have been proved and still the district fall far
short of accomplishing the purpose of its organization. The
object of organizing the district and of assessing the land
was that it might be drained, and the contention before the
court was that the lands of the petitioners, on account of the
character of the ditch, had not been properly drained, and
that the ditch should be deepened and widened in order to
accomplish the purpose sought. The offered evidence was
immaterial and properly excluded.

Complaint is further made of the refusal of the trial court
to hold the first, seventh, eighth, ninth, tenth and eleventh,
and the modification of the fourth and sixth, propositions of
law submitted by plaintiffs in error. No specific grounds or
reasons are pointed out why the rulings of the court in this

regard were erroneous. It is simply asserted that the propositions as submitted stated the law clearly governing the case. We are not required, under this general objection, to search the record for reasons upon which to condemn the rulings of the trial court. We may say, however, that we have examined all of the propositions refused and can see good reasons for the refusal of each.

It is next earnestly insisted that any rights which defendants in error might have had were long since barred by the Statute of Limitations, and the relief prayed in the petition should have been therefore denied. Considerable space is taken in the argument of the question as to just when the Statute of Limitations began to run and just when the rights of defendants in error were barred. We think the facts presented in this record are not sufficient to sustain this contention. Exhibit 18 offered in evidence is a petition filed by the commissioners of the drainage district on September 7, 1900, for permission to levy an assessment to do certain work along the Red Oak ditch, as recommended by their engineer. Exhibit 19 is an order entered by the county court on September 17, 1900, ordering the said commissioners to make an assessment of $4000 to do the work recommended by the engineer. Exhibit 20 is a record of a meeting of the commissioners held September 7, 1900, in which they found that a portion of the lands in said district, known as the Red Oak country, by reason of error in the locating and constructing the ditch of said district, and from other causes, are not drained and protected as contemplated, and that they receive only partial or no benefit from the ditches already constructed, and that it will be necessary that a new ditch be constructed so that said lands may receive their proper and equal benefits; which new ditch will cost $4000, and a levy is accordingly made for that purpose. Exhibit 21 is a special assessment list showing the levy of the assessment. Exhibits 23, 24, 25 and 26 are demands made by the petitioners upon the commissioners for the same relief as de-

manded in the petition. From all of these exhibits it would seem that the commissioners recognize the rights of the petitioners for the relief sought, and had recognized these rights by taking steps to do the work necessary to grant the relief. They were required to furnish the lands of the district with adequate drainage, and while the owners might become estopped by *laches·* or acquiescence from securing their rights, yet the evidence shows that the owners were continually demanding relief and the commissioners were recognizing the justness of the claim and taking steps to supply additional drainage. Under such circumstances the right was not barred by the Statute of Limitations, and the court committed no error in so holding.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*