Langan v. Milk's Grove Special Drainage Dist. No. 1, 144 App. 394.

that from it the debtor was entitled to select $100 worth, and was deprived of that right by the failure of the officer to have the property appraised and to permit him to make his selection of $100 worth. It would shock the sense of justice of any reasonable man to permit the debtor in such a case to recover $10,000 from the officer, when he had only been deprived of $100.

This opinion will be lodged with the clerk, and counsel for both parties will be notified thereof. If, within seven days, appellee files a *remittitur* of all the principal of said judgment except $100, it will be affirmed at the sum of $100 and the costs of this court will be adjudged against appellee. If such *remittitur* is not filed the judgment will be reversed and the cause remanded.

*Affirmed upon remittitur.*

Thereafter appellee filed a *remittitur* of all said judgment except $100. The judgment is therefore affirmed in the sum of $100. The costs of this court are adjudged against appellee.

---

**Thomas N. Langan, Appellee, v. Milk's Grove Special Drainage District No. 1, Appellant.**

**Gen. No. 4,995.**

1. DEMURRER—*when does not sufficiently rely upon Statute of Limitations.* A demurrer does not sufficiently rely upon the Statute of Limitations where it alleges that "it does not sufficiently appear from said petition * * * that the petitioner is not now barred by the Statute of Limitations from demanding the relief prayed for"; it is essential that the demurrer set up that the petition demurred to shows that the action is so barred.

2. MANDAMUS—*nature of action.* Mandamus is an action at law and is governed by the same rules of pleading that are applicable to other actions at law.

SECOND DISTRICT—OCTOBER, 1908.    395

Langan v. Milk's Grove Special Drainage Dist. No. 1, 144 App. 394.

3. MANDAMUS—*how defense of Statute of Limitations must be made.* To a petition of *mandamus* the Statute of Limitations must be specifically pleaded; it cannot be raised by demurrer to the petition.

4. MANDAMUS—*when laches not defense.* Laches short of the statutory period of limitations is no defense to an action of *mandamus.*

5. MANDAMUS—*when demand upon drainage district sufficient.* Held, that the demand averred in this case upon the drainage trustees, to alter, repair and modify the drainage district was sufficient.

6. DRAINAGE—*what not required of dissatisfied landowner.* A landowner demanding of drainage trustees that the district be repaired, altered or modified is not required to do the surveying and civil engineering necessary to determine just where the difficulty lies or just how much or kind of repairs would be sufficient to give the proper outlet insisted upon.

THOMPSON, P. J., dissenting.

Mandamus. Appeal from the Circuit Court of Iroquois county; the Hon. FRANK L. HOOPER, Judge, presiding. Heard in this court at the April term, 1908. Affirmed in part and reversed in part. Opinion filed October 23, 1908.

**Statement by the Court.** Thomas N. Langan filed a petition against Milk's Grove Special Drainage District No. One of the towns of Milk's Grove and Chebanse, in Iroquois county, praying for a writ of *mandamus* to compel the commissioners of said district to alter, repair and modify the drainage system of said district and to deepen and widen the main ditch between certain points specified and to deepen and widen two certain lateral ditches across the lands of the petitioner and to the place where they emptied into the main ditch, so as to provide an outlet of ample capacity to carry the water off the petitioner's land and to drain the same so that petitioner's land would receive the protection and benefit contemplated when the district was organized and when the lands were classified, and that they make a special assessment to meet the cost thereof. The district filed a general and special demurrer to said petition, which was overruled. The district elected to abide by its

396    APPELLATE COURTS OF ILLINOIS.

Langan v. Milk's Grove Special Drainage Dist. No. 1, 144 App. 394.

demurrer and there was a judgment awarding a writ of *mandamus* substantially in the terms of the prayer of the petition. This is an appeal by the district from that judgment.

The petition stated that the district was organized February 26, 1885, under the Farm Drainage Act of 1879, for the purpose of constructing, repairing and maintaining drains, embankments and grades within said district for agricultural and sanitary purposes, by special assessment upon the property benefited thereby. An exhibit attached to the petition and made a part thereof contained a plat of the district and gave the classification of each forty-acre tract therein. The petition stated that the petitioner owned section 35 in township 29 north and of range 10, east of the third principal meridian, at about the center of said drainage district. From the plat it appears that he owned nearly one-twelfth of the lands of the district. The petition stated that the district adopted a system of drainage and built one main drain extending from the south end of petitioner's land through the lower part of the district and to an outlet in Langham Creek, at the southeastern part of the district, and constructed laterals emptying into said main ditch, and among them two lateral open ditches crossing petitioner's land from higher land. The petition showed that assessments had been made against the petitioner for over one-sixth of the entire cost of the work done, and that all said assessments were paid when due, besides several later assessments in repairing and maintaining the drainage system. The petition stated that the whole of said section 35 is level land and that the central portion of it is low; that the purpose of said assessments was to furnish petitioner an outlet into which he might drain the waters off of his land and to carry off the waters brought upon his land by said two lateral ditches crossing his land from other lands above. The petition stated that said main ditch was not so constructed as to furnish an outlet for the

water on petitioner's land and for the waters brought upon his land by said lateral ditches; that the waters brought upon his land by said lateral ditches came from lands the surface of which is higher than petitioner's land; that, owing to the narrowness and shallowness of the main ditch from the south part of petitioner's land to said creek, the waters brought upon petitioner's land by said two lateral ditches remain upon petitioner's land for such a length of time as to destroy petitioner's crops and grain grown on said lands to the amount of several thousand dollars each year; that this is caused by the narrowness, shallowness and incapacity of said main ditch running from the south part of said petitioner's land to said creek; that said main ditch from petitioner's land to the creek, by reason of error in the construction of the same, completely fails to furnish an outlet for the drainage of petitioner's land and for carrying off the water brought upon said petitioner's land by said two lateral ditches, and completely fails to furnish an outlet for the drainage of petitioner's land as was originally contemplated by the construction of said drainage ditch, and that it is of little or no value to the petitioner for any purpose. The petition also alleged that the said two lateral ditches were constructed too narrow and too shallow through petitioner's land to carry off from petitioner's land and into the main ditch the water which the said two lateral ditches brought upon said land from lands above. The petition stated that if the main ditch was deepened and widened from a point where it crosses the east line of Milk's Grove township up to a point where the said two lateral ditches connect with the main ditch in the south part of petitioner's land (which would be apparently about the upper one-third of the length of the main ditch), and if said two lateral ditches were deepened and widened from the place where they emptied into the main ditch up through petitioner's land to his west line, a complete outlet would be fur-

398    APPELLATE COURTS OF ILLINOIS.

Langan v. Milk's Grove Special Drainage Dist. No. 1, 144 App. 394.

nished, as petitioner is informed and believes, to the drainage of petitioner's land and for carrying off the water brought upon his land by said two lateral ditches. The petition further stated that at the time it was filed from the point where the two lateral ditches connect with the main ditch to where the main ditch intersects the east line of Milk's Grove township, being about 10,700 feet in distance, there is a fall of about eight feet in the bottom of the ditch, and that said ditch could be deepened and widened sufficiently to give petitioner a complete outlet and carry off the water from petitioner's land and the waters of said two lateral ditches, without interfering with the flow in the main ditch, and that an average fall of one foot for said distance would be amply sufficient to carry off said water. The petition further stated that, if the main ditch was so deepened and widened as to furnish a complete outlet as aforesaid, there would be an average fall in the bottom of said two lateral ditches of at least three feet, while an average fall of one foot would be sufficient. The petition further stated that in 1905 the district deepened and widened one of said lateral ditches, so as to cause more water to be brought upon petitioner's land and to increase the already overtaxed capacity of the main ditch, commencing at the south part of petitioner's land, and to cause more water to be brought in to stand on petitioner's land. The petition further stated that the cost of modifying and changing the main ditch from the east line of Milk's Grove township and deepening and widening it to where the two lateral ditches connect with it in the south part of petitioner's farm, being a distance of about 10,700 feet, and deepening and widening the two lateral ditches from the place where the same empties into the main ditch in the south part of petitioner's land up to the point where they intersect the west line of petitioner's land, being a distance of about 2,000 feet, would be approximately $8,000. The petition further

SECOND DISTRICT—OCTOBER, 1908.     399

Langan v. Milk's Grove Special Drainage Dist. No. 1, 144 App 394.

stated that the benefits accruing to the several tracts of land in said district, except petitioner's land, far exceed the several assessments levied against the same; that there is no money in the treasury of the district; that it will be necessary to make an additional levy to raise the amount necessary to modify the drainage system so as to drain the land of petitioner and to carry off the water brought upon petitioner's land by said two lateral ditches as contemplated in the organization of said district and the classification of said lands; that the benefits accruing to the several tracts of land in the district will far exceed the amount of the assessments made in completing the district, including the necessary change; that the petitioner has often requested the drainage commissioners and their predecessors in office to deepen and widen said main ditch from the east line of Milk's Grove township up to and into the south part of petitioner's land, and to deepen and widen said two lateral ditches from where the same empty into the main ditch in the south part of petitioner's land up to where they intersect the west line of petitioner's land, so that he might have an outlet to drain his land and to carry off the water brought thereon by said two lateral ditches, and might receive the benefits contemplated by the organization of said district and construction of said drainage ditch, but they have refused and neglected so to do.

A. F. GOODYEAR, for appellant.

T. W. SHIELDS, J. H. CAREY and FRANK J. BURNS, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

It is urged that the demurrer should have been sustained on the ground that some statute of limitations is a bar to this proceeding. All that the special demurrer contains on that subject is as follows:

400    Appellate Courts of Illinois.

Langan v. Milk's Grove Special Drainage Dist. No. 1, 144 App. 394.

"It does not sufficiently appear from said petition * * * 8. That the petitioner is not now barred by the Statute of Limitations from demanding the relief prayed for."

This is not equivalent to saying that the petition shows that the suit was barred, but only that the petition does not show that the action is not barred. In a common law pleading the pleader is not bound to notice or guard against the Statute of Limitations in stating his cause of action. But if the ground of demurrer alleged had been that the petition affirmatively showed that the Statute of Limitations had run against the cause of action, yet that ground of demurrer would not be well taken for two reasons.

1. This is an action at law and it is governed by the same rules of pleading that are applicable to other actions at law. Cleary v. Hoobler, 207 Ill. 97; Mayor of Roodhouse v. Briggs, 194 Ill. 435; People v. Board of Trade, 193 Ill. 577; Chicago Great Western Railway Company v. People, 179 Ill. 441. In the case last cited it was said: *"Mandamus* is a common law action and in the circuit court is governed by common law rules as to pleadings." Such also is the statute. Revised Statutes, chapter 87, section 4. In 1 Chitty's Pleading 496, the rule is stated: "It is always necessary to plead the statute of limitations specially." In Gunton v. Hughes, 181 Ill. 132, it is held that at law a defendant cannot avail of the Statute of Limitations by demurrer, even if it appears on the face of the pleading that the time fixed as a limitation has expired, but he must plead the statute specially and give the plaintiff the opportunity to reply any special matter which prevents the bar from attaching. Wall v. C. & O. R. R. Co., 200 Ill. 66, is to the same effect.

2. The petition shows that the district deepened and widened one of the lateral ditches across petitioner's land in 1905 and thereby increased the flow of water from the lands above to and upon petitioner's land, and that the same would stand there for

lack of sufficient width and depth of the main ditch from the south part of petitioner's land for about 10,700 feet to the east line of Milk's Grove township, over which distance a fall of eight feet permits complete relief to be given to petitioner. It is not claimed that any Statute of Limitations has run since 1905 and therefore the Statute of Limitations is not a defense under a demurrer confessing the foregoing allegations.

*Laches* was alleged as a ground of special demurrer. We are of opinion that what was last above said disposes of that defense.

It is insisted that there is not sufficient allegation of a demand. Almost the same language upon that subject used in this petition was used in the petitions in Peotone Drainage District v. Adams, 163 Ill. 428, and Kreiling v. Nortrup, 215 Ill. 195, and they were there treated as sufficient.

The chief objection urged to the petition is that it is too indefinite. If the contentions of the district in that respect are sustained it would be necessary for the petitioner to employ a surveyor, have a survey made of the main ditch for the 10,700 feet thereof from the south part of his land to the east line of Milk's Grove township and of said lateral ditch for the 2,000 feet thereof through his land and cause profiles thereof to be made showing the width, depth and fall of said main ditch and said lateral ditch within said limits, and to file with the petition a profile thereof, and also to cause a surveyor or civil engineer to make estimates and draw profiles showing how deep and how wide and at what grade of descent said ditches should be in order to give petitioner an outlet for the waters from his land and for the waters brought upon his land by said two lateral ditches. It would then be necessary for the petitioner to amend his petition and set up and allege all said facts and details so as to furnish the district with full information as to the manner in which they can make the

drainage ditches accomplish the duty intended. The act under which this district was organized was repealed by the act in force July 1, 1885, but the district was continued in existence under and subject to the provisions of said later act. Cleary v. Hoobler, *supra*. Section 41 of said act of 1885, as amended in 1901, enacted that after the completion of the work the commissioners of the district shall keep the same in repair, and if the lands of the district are not drained as contemplated or they receive partial or no benefit, the commissioners shall use the funds of the district to carry out the original purpose, to the end that all the lands so far as practicable shall receive the benefits contemplated when the lands were classified, and if sufficient funds are not on hand the commissioners shall make a new tax levy. There is nothing in this to imply that the dissatisfied landowner must do the surveying and civil engineering necessary to determine just where the difficulty lies and just how much and what kind of repairs would be sufficient to give the proper outlet. An imperative duty seems by this statute to be imposed upon the drainage district, when it is ascertained that certain lands within the district are not drained when they have been classified as to be benefited by the ditches of the district, to take the initiative and give the landowner the required relief. This duty was expressed in the opinions in Peotone Drainage District v. Adams, 61 Ill. App. 435, and 163 Ill. 428. It seems most in harmony with the spirit of said amended section 41 of the Farm Drainage Act to hold that all the landowner needs to show is that his lands have been classified as to be benefited and have been assessed and that he has paid the assessment, and that his lands have not been drained, and to show reasonable ground for believing that the ditches and drains of the district can be so repaired as to give him the drainage contemplated by the organization of the district and the classification of his lands. Here the petition shows that in a dis-

tance of 10,700 feet from the south part of petitioner's land there is a fall of eight feet, and that a fall of three feet in that distance in a ditch properly widened and graded at the bottom would drain petitioner's land. It would seem burdensome to cast upon the landowner the civil engineering duties here called for. The district would not be bound to repair the ditches in the precise manner so suggested by the petitioner, unless indeed the judgment in *mandamus* so commanded, and the expense thus incurred by the landowner would very likely be lost. It seems to be the policy of the law to leave in the authorities of such a district a considerable discretion as to the precise manner of carrying out the details of such an improvement which may vary as conditions develop in actually doing the work. The judgment usually only commands the district to produce the result of relieving the land. In Peotone Drainage District v. Adams, *supra,* there was indeed in the amended petition some attempt to indicate what might be done by way of changing the underground tile drain there in question so as to relieve petitioner's land, but as that tile drain was underground and out of sight, it is obvious that the allegations of that petition on that subject must have been largely matter of opinion. The amended prayer of the amended petition in that case only asked that the drainage commissioners be commanded "to alter, repair and modify said drainage system so as to provide an outlet of ample capacity to the end that your petitioner's said land shall receive the protection and benefit contemplated when said drainage district was organized and the said lands were classified, and that they make a special assessment to meet the cost thereof." The judgment of the court was in substantially the same words. It commanded the commissioners so to repair and modify the drainage system as to give the landowner adequate drainage, but how the previous work should be changed to accomplish that result was left to the com-

404 . APPELLATE COURTS OF ILLINOIS.

Langan v. Milk's Grove Special Drainage Dist. No. 1, 144 App. 394.

missioners. If therefore such a prayer and such a judgment are proper and sufficient, it would seem unnecessary for the landowner in his petition to set out details which were not to be incorporated in the judgment. In Kreiling v. Nortrup, *supra,* the petition, the prayer and the judgment seem to have been substantially like those in the case before us, and the judgment was affirmed. True, that petition was not tested by a demurrer, but the two cases just cited seem to indicate the proper pleading and practice in such case. If so, this petition is not subject to the charge of being too indefinite.

One sentence in said petition states that if said main ditch and two lateral ditches be deepened and widened within the limits already stated, a complete outlet would be furnished for the drainage of petitioner's land and for carrying off the water brought thereon by said two lateral ditches, ''as your petitioner is informed and believes.'' That sentence does not aid the petition, for the allegations of a common law pleading must be positive and are not permitted to be made upon information and belief. It is argued that the entire petition is bad because of the words just quoted. An examination of other parts of the petition show that the same charge is elsewhere substantially alleged without that qualification. The allegations that the fall from the south part of the petitioner's land to the east line of Milk's Grove Township, a distance of about 10,700 feet, is about eight feet, and that said main ditch can be deepened sufficiently to give petitioner a complete outlet and carry off the water from petitioner's land and from the two lateral ditches without interfering with the flow in the main ditch, and numerous like allegations, are positively alleged and as positively admitted by the demurrer. The presence therefore of a single allegation in a single sentence based only upon information and belief is not sufficient to render the pleading obnoxious to the demurrer.

SECOND DISTRICT—OCTOBER, 1908.     405

Langan v. Milk's Grove Special Drainage Dist. No. 1, 144 App. 394.

The judgment includes an order for an execution against the drainage district. The district is a *quasi-municipal* corporation, and the commissioners are sued only in their official capacity, and it was error to award execution. That part of the judgment must be reversed, but as no point was made upon it by appellant, such partial reversal should not carry costs in this court. The order for execution is reversed and in all other respects the judgment is affirmed at the costs of the district, without execution.

*Affirmed in part and reversed in part.*

Mr. Presiding Justice THOMPSON, dissenting.

The only question before this court is the sufficiency of the petition. The demurrer is special and general. The petition nowhere gives the dimensions or particular description of the main ditch or the two lateral ditches which the petitioner desires to have enlarged and deepened nor does it state how much any of the ditches are to be deepened or widened. Neither does the petition state in positive terms that the changes desired will be of any benefit. The statement of the petition is that if the ditches be deepened and widened between certain points "a complete outlet will be furnished as your petitioner is informed and believes to the drainage of your petitioner's land and for carrying off the water brought on by the two lateral ditches." Counsel for petitioner rely on the cases of Peotone & Manteno Union Drainage District v. Adams, 61 Ill. App. 435, affirmed in 163 Ill. 428, and Kreiling v. Nortrup, 116 Ill. App. 448, affirmed in 215 Ill. 195, as authority for the sufficiency of their petition. The language and statement of facts of the petition in this case and in the case of 61 Ill. App. are somewhat similar but in the case at bar the petition lacks the certainty and completeness of the statement in the case relied on. It should be observed however that in the two cases relied upon issues were joined and trials had on the issues. The suf-

406   APPELLATE COURTS OF ILLINOIS.

Langan v. Milk's Grove Special Drainage Dist. No. 1, 144 App. 394.

ficiency of the petitions was not raised in either case by demurrer. In the Peotone case the petition had attached a "plat of the district together with a profile of the contemplated improvements which showed the drainage that was claimed to be insufficient," and the court said that "A map or profile, marked exhibit 'C' with his petition indicates the character and change necessary to give the petitioner the outlet which in his judgment was proper and right; and that it would cost $150 to make the change." In that case it was clearly shown what change the petitioner sought to compel the district to make. In the present case no facts are alleged as to the desired change except that the change required is the deepening and widening of ditches that will "cost approximately $8,000" and is to extend over two miles in length along the main ditch in which there is a fall of eight feet and along the lateral ditches across petitioner's land. There is no statement that, if the $8,000 should be assessed, raised and expended, it would be of any service. All the petitioner states is that "a complete outlet will be furnished as petitioner is informed and believes."

"The writ of *mandamus* will not be awarded in any case unless the relator shows a clear legal right to have the thing done, and in the manner asked." "It will never be ordered in a doubtful case." "Every material fact necessary to show the plain duty of the respondent to act in the premises must be set forth by a party seeking to compel the performance of an act." "The burden is always on the relator to clearly establish the right sought to be enforced." Swigert v. Co. of Hamilton, 130 Ill. 538; Cristman v. Peck, 90 Ill. 150; Gormley v. Day, 114 Ill. 185; People v. Mayor, 51 Ill. 27; People v. Town of Mount Morris, 145 Ill. 430; Gunning v. Sheahan, 73 Ill. App. 118. It is the duty and obligation of the commissioners to provide ample drainage for assessed land in the district. Binder v. Langhorst, 234 Ill. 583. On the facts stated in the petition, if the enlargement of the

ditches desired will furnish the relief appellee desires he is entitled to the writ of *mandamus*. Bromwell v. Flowers, 217 Ill. 174. It is however necessary that the petition should state in such form as to be issuable that the work the district was sought to be made to perform, *prima facie,* would accomplish the desired object. The petition should allege the facts which petitioner would be required to prove to sustain it. I am of the opinion that the petition was insufficient in not showing with reasonable certainty the specific improvements or changes that were desired, and that such changes would accomplish what petitioner was entitled to. The appellant should not be required to raise and expend $8,000 as an experiment without a positive statement from some person that it will be beneficial. I think the demurrer should have been sustained with leave to the petitioner to amend if he desired.