## Samuel S. Staley, Appellee, v. Commissioner of Highways of Enfield Township, White County, Illinois, Appellant.

1. ROADS AND BRIDGES, § 163*—*when question of power to tax not in issue in mandamus to restore bridge.* In mandamus against a highway commissioner to restore a bridge which had been washed away, there was no occasion to discuss the power to direct the levying of taxes or borrowing money, where it appeared from the evidence that there was sufficient money on hand at the time of the trial to build the bridge in question.

2. ROADS AND BRIDGES, § 163*—*when commissioner of highways will be required by mandamus to rebuild bridge.* A commissioner of highways was required by mandamus to rebuild a bridge which had been washed away, where, as the record stood, the bridge was needed and there was sufficient money on hand with which to build it.

3. ROADS AND BRIDGES, § 163*—*what is effect of testimony of highway commissioner on mandamus to rebuild bridge.* In mandamus against a highway commissioner to rebuild a bridge which had been washed away, and which was needed, where the question as to whether money to build the bridge was on hand was material, and where there was sufficient money on hand, testimony of the com-

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

404      Appellate Courts of Illinois.

Staley v. Comm'r of Highways of Enfield Township, 214 Ill. App. 403.

missioner to the effect that the money could be used elsewhere manifested no disposition on such commissioner's part to exercise his discretion and use it in some other place, nor was it proof that the money was needed elsewhere.

4. Roads and bridges, § 163*—*who required to rebuild bridge.* The fact that the Supreme Court held it to be the duty of drainage commissioners to rebuild a bridge after removing the former one did not, after such rebuilding, place a greater burden on the town in question than had existed when such former bridge was in its place, and the continuing duty was thereafter on the town to maintain the rebuilt bridge; and where such bridge was subsequently washed away, the road commissioner and not the drainage district was required to rebuild it.

5. Roads and bridges, § 158*—*duty to repair bridges.* The question of the duty of repairing bridges and on whom the duty devolves, together with a definition of the word "repair," discussed.

6. Roads and bridges, § 158*—*who required to repair roads and bridges.* Whatever is practicable in the way of repairing the roads and bridges is a duty on the towns and districts to be performed by the commissioners of highways of the town or district as the case may be.

7. Roads and bridges, § 158*—*meaning of "practicable" as used in statute.* The word "practicable" in Illinois Road and Bridge Law, Call. 1916 Stat. ¶ 10000(50), subd. B, clause 6, providing that highway commissioners shall have power and it shall be their duty to have general charge of roads and bridges of their districts, to keep same in repair and to improve them so far as practicable, means that the commissioners are required to keep the roads and bridges in repair and improve them so far as that work may be performed.

8. Roads and bridges, §§ 154, 159*—*when discretion of road commissioners is subject to control by mandamus.* The discretion given to road commissioners as to the use of their judgment in building and repairing roads and bridges is subject to control by mandamus, if abused.

9. Roads and bridges, § 161*—*what not within authority of county superintendent of highways in matter of letting contract for construction or repair.* The provision of the Road and Bridge Act that no contract shall be let by the road commissioners for the construction or repair of any road or bridge in excess of $200, etc., without the approval of the county superintendent of highways, Call. 1916 Stat. ¶ 10000(50), subd. B, clause 5, did not give such superintendent any part in determining the necessity for the work to be

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

done, nor did it give him any authority in determining whether it should be done.

Appeal from the Circuit Court of White county; the Hon. JULIUS C. KERN, Judge, presiding. Heard in this court at the March term, 1919. Affirmed. Opinion filed June 6, 1919. *Certiorari* denied by Supreme Court (making opinion final).

JAMES M. ENDICOTT and CHARLES T. RANDOLPH, for appellant.

F. M. PARISH and CREIGHTON & THOMAS, for appellee.

MR. JUSTICE EAGLETON delivered the opinion of the court.

Lost Creek Drainage District is organized under the Levee Act and lies in Hamilton and White counties. It lies in part in the Town of Enfield, White county.

Appellee, Samuel S. Staley, who was the petitioner in the court below, is the owner of certain lands situated in the Town of Enfield on which he resides with his family. Enfield is the nearest market for appellee, and a public road, for public and private use, lies between the home of appellee and Enfield. This road crosses a certain creek called Lost Creek at a point between the home of appellee and Enfield, and a bridge had been maintained on said road at said point for many years.

In constructing the drains and ditches in Lost Creek Drainage District the commissioners of the drainage district removed the bridge on the road in question crossing Lost Creek. This was done for the purpose of digging the main channel of the creek deeper and using the same as part of the drainage system of the district. After digging the creek deeper at this point, the commissioners of the drainage district and the commissioners of highways made an agreement to

rebuild the bridge in question and some other bridges that had been removed by the drainage commissioners. Under this agreement the commissioners of highways were to have charge of the work and it was to be paid for in part by the drainage district and in part by the town. Pursuant to this agreement the bridge in question was constructed and was paid for according to the agreement.

In April, 1917, the bridge at the point in question was washed away and the road at that point rendered impassable and from that time has continued to be impassable. The appellant having refused to restore the bridge, on April 27, 1918, the petition for mandamus was filed in this cause.

There is no dispute that because of the bridge being out the public road at the point in question is impassable, and that the bridge is needed, nor that the place where the bridge is sought is in a public road.

The evidence shows that the appellee and some of his neighbors obtained permission from a neighboring landowner to go over his land in going to market. It also appears from the evidence that when heavy rains are falling the children of appellee cannot go to and from school on the road in question. It further appears that the crossing over the neighbor's land is about half a mile north of the road in question.

It is argued that the petition is insufficient to sustain the action and that under the facts proven the court had not the power to grant the writ. These two questions are discussed together, and it seems to be the basis of the argument that the court had not the power to award the writ in this case when all the facts are considered. There is no substantial difference in the averments of the petition and the evidence.

Counsel for appellant cite various provisions of the statute providing for the levy of taxes and the issue of bonds for the purpose of raising money where a

greater sum is required than is available, and urge that there is not sufficient money on hand with which to build the bridge. On the trial the supervisor of the Town of Enfield testified that he had on hand the sum of $2,137.77, which was held for the ordinary repair and upkeep of the roads and bridges of the town. The highest estimate of the cost of building the bridge was from $1,200 to $1,500. Inasmuch as there was sufficient moneys on hand, at the time of the trial, to build the bridge in question, there is no occasion to discuss the power of the court to direct the levying of taxes or borrowing money.

As the record stands the bridge is needed and there is sufficient money on hand with which to build it. Under these conditions can a court require the commissioner of highways to build the bridge?

A number of cases are cited by counsel for appellant wherein the power of the court to award a writ of mandamus compelling commissioners of highways to build bridges has been denied. An examination of these cases discloses that in none of them did the commissioners have on hand the money with which to do the work demanded. While it is true the appellant said: "If I could have got hold of it would have most all of it been spent by this time. There are several places in the township that I could use the money on." It may be the money could be used elsewhere, but this manifests no disposition on the part of the appellant to exercise his discretion and use it in some other place nor is it proof that it is needed elsewhere.

Section 50 of the Illinois Road and Bridge Law makes provision as to some of the duties of commissioners of highways. The first sentence of paragraph B of that section and clause 6 of paragraph B are as follows:

"(B) The highway commissioners of each town or road district shall have power and it shall be their duty:

"(6) To have general charge of the roads and bridges of their town or district, to keep the same in repair and to improve them so far as practicable." Callaghan's Illinois Law (1913-1916), pages 1429-1430.

Counsel for appellant argue that the duty of keeping the bridge in repair devolved on the drainage district after it had taken out the old bridge. This contention is not supported by any authority. The Supreme Court held it to be the duty of the drainage commissioners to rebuild the bridge after removing the former bridge. When this was done no greater burden was placed on the town than had existed when the former bridge was in its place. The duty was then on the town to maintain the bridge, and that duty was a continuing one except that the commissioners of the drainage district, having removed the former bridge, had not the power to place the burden of building another bridge on the town.

In *People v. Block,* 276 Ill. 286, the Supreme Court held a statute unconstitutional that required a town to rebuild a bridge that had been taken down by the drainage commissioners in the construction of a drainage ditch. There, as in this case, a natural waterway had been used in the construction of the ditches in a drainage district. When doing the work the drainage commissioners removed the bridge. When the question as to rebuilding the bridge was before the Supreme Court they said: "The legislature has imposed the care of roads and the construction, maintenance and repair of bridges upon the various towns throughout the State," etc. They also said: "They possess the only authority conferred by law for levying a tax or incurring a liability for road and bridge purposes." They held, however: "No debt can be imposed upon the town by any authority for such purposes against its will, and no tax can be imposed for such purposes except by the proper corporate authorities,—the highway commissioners."

In *People v. Highway Com'rs of Towns of Dover and Ohio,* 158 Ill. 197, is a discussion by the Supreme Court on the question of the duty of repairing bridges and on whom that duty devolves together with a definition of the word "repair."

They say: "Lord Coke, in 2 Inst. 700, 701, says: 'But admit that none at all were bounden to the reparation of the bridge, by whom should it be repaired, by the common law? The answer is, by the whole country, etc., wherein the bridge is, etc., because it is for the common good and ease of the whole country.' In *King v. Inhabitants of the West Riding of Yorkshire,* 2 East 342, it was held that, by the common law, if a bridge be of public utility and is used by the public, then the public must repair it, even though it was built by an individual. And the same rule was unanimously held in the case of *Rex v. West Riding,* 5 J. Burrow 2594, where the common-law doctrine was much considered. In *State v. Town of Campton,* 2 N. H. 513, it was held that a bridge, though erected by individuals, yet if dedicated to the public and used by the public so long as to evince its public usefulness, must be repaired by the public; and also held, that under the statute of that State this public duty devolved altogether upon towns, and in no case upon counties."

In construing the word "repairs" in that case, the Supreme Court use the following language:

" 'To restore' and 'to renew' are given by lexicographers as synonyms of repair. It has always been held at common law, that under a covenant to repair a tenant is obliged to rebuild, even in the case of total destruction of the demised premises. In *Brecknock Canal Nav. Co. v. Pritchard,* 6 T. R. 750, it was held that a covenant binding a party to keep a bridge in repair bound him to replace it, although it was totally destroyed by flood."

They also held: "And in *Howe v. Commissioners of*

*Crawford Co.,* 47 Pa. St. 361, where the words used in the statute were 'to repair,' the court said: 'If we should set aside the act altogether, the duty of maintaining the bridge, once legally imposed upon the county and never taken off, would still have to be enforced.' And further said: 'We cannot graduate repairs, and say slight ones shall be done and large ones may be neglected. The legislature did not mean we should do this. They meant by repairs, whatever should be necessary to make bridges safe and passable.'"

The statute above quoted places the duty of keeping the roads and bridges in repair so far as practicable on the commissioners of highways, and the word "repair" requires this to be done to the extent of rebuilding. Under the authority cited this duty will continue until the duty is placed elsewhere. The only limitation on this duty is that it is to be performed "so far as practicable." In other words, whatever is practicable in the way of repairing the roads and bridges is a duty on the towns and districts to be performed by the commissioners of highways of the town or district as the case may be.

The word "practicable" is defined in Webster's New International Dictionary: "1. That may be practiced or performed." And in the Standard Dictionary of the English Language, "1. That can be put into practice; possible of execution or performance." The Supreme Court in the case of *Streeter v. Streeter,* 43 Ill., on page 165, defines the word as follows: " 'Practicable' is that which may be done, practiced or accomplished, that which is performable, feasible, possible," etc. Applying this definition, the commissioners of highways are required, to keep the same (roads and bridges) in repair and improve them so far as that work may be performed.

The main contention of appellant is that the commissioner has the right to exercise his judgment in

building and repairing the roads and bridges, and that what he will do and what he will not do is entirely discretionary with him.

In discussing the power of a court to compel certain officers to perform the duties enjoined on them by law, High, in his work on Extraordinary Legal Remedies, says:

"And it is a general rule applicable to all municipal corporations, that whenever the duty is plainly incumbent upon such bodies of making local improvements, such as streets, highways or bridges, or keeping in repair improvements already constructed, and the obligation is so plain and imperative as to leave no room for the exercise of any discretion upon the part of the municipal authorities, mandamus will lie to enforce the obligation." High's Extraordinary Legal Remedies, sec. 413.

In *Brokaw v. Highway Com'rs Bloomington Tp.*, 130 Ill. 482, some one had built a fence in the public highway causing an obstruction therein, which made the road impassable. It was argued that the commissioners of highways could not be compelled, by mandamus, to remove the obstruction for the reason they had the right to use their discretion in the matter. In passing on the case the Supreme Court says: "It is urged, that as the commissioners have charge of the roads in their town, they have a discretion in respect to the matter of their management, and that the courts will not coerce them, by mandamus, in regard to matters that are placed under their control and left to their discretion. * * *" And they further say: "In the statute before us it is clear that a duty is imposed upon public officers, and that the rights and interests both of the public and of third persons are involved, and they have a claim, as a matter of right, that the highway commissioners should exercise the power given them, and the duty

412    APPELLATE COURTS OF ILLINOIS.

Staley v. Comm'r of Highways of Enfield Township, 214 Ill. App. 403.

devolved upon them of keeping the public road clear and free from fences or other obstructions that render it impossible to travel thereon.  *  *  *  When a discretion is abused, and made to work an injustice, it is admissible that it shall be controlled by mandamus. *Village of Glencoe v. People,* 78 Ill. 382; Tapping on Mandamus (Am. Ed.) 66."

*Klein v. People,* 31 Ill. App. 302, is a case in which a petition for mandamus was filed to compel the commissioners of highways to perform certain work on the roads of their town. The court entered an order against the commissioners directing them to work upon and repair that part of the road described in the petition, "by removing the weeds and underbrush and repairing the culverts, and that they should proceed without unnecessary delay to put said highway in a condition fit to be used as a highway, and to remove all obstructions and impediments to travel." The court did not find that the commissioners had the money on hand with which to do this work nor was it alleged in the petition that they had the necessary funds. The Appellate Court for this district reversed the case and held:

"Where there is entire neglect to work the roads, and the same are out of repair, it has been held that a proceeding by mandamus is the proper remedy to compel the commissioners of highways to do their duty. But there is a certain judgment and discretion left to the commissioners of highways in the discharge of their duty under the law,  *  *  *  they cannot be commanded, in this character of proceeding, to perform a duty in a manner specific, as in the judgment before us, but can only be commanded generally to do their duty. Therefore, to decree that the repairs should be made in a specific manner, and that the work done should be of a particular character, was error."

The court also held: "Again, there is in this judg-

ment no finding by the court, nor is there in the petition any allegation that the defendants, the commissioners of highways, had in their possession any money that could be used, for the purpose of putting the road in repair.''

Likewise they held ''The commissioners of highways must have either money on hand, or money that can be controlled by them, before they can be ordered to expend money.'' They reversed this case because of the specific direction as to the manner in which the work should be done on the roads and the fact that there was no finding that there was money on hand with which to do the work.

In *Peotone & M. Union Drain. Dist. v. Adams,* 61 Ill. App. 435, on page 442, in speaking of the discretion of officers in the performance of certain duties, the Appellate Court says: ''It is laid down by High on Extraordinary Legal Remedies, as follows: 'Nor does the fact that certain incidents and details of the work are left discretionary with the authorities as regards the manner of their execution render the duties less mandatory, or constitute a bar to relief by mandamus.' High's Extraordinary Legal Remedies, secs. 413 and 415.   *   *   *   Road commissioners, with the same propriety, as it is here contended, could say that they were the judges as to whether the highways needed repairs, and as to whether obstructions needed removal, but the courts hold the statute mandatory, and that they must keep the roads in repair, when actually needed, with discretion as to the mode.''

Finally it is urged by counsel for appellant that the commissioner of highways is required to submit any contract for the construction or repair of roads and bridges, where the expense thereof exceeds $200, to the county superintendent of highways before entering into a contract, and for that reason the commissioner of highways has not the authority to do the

work demanded.   The statute on that question is as follows:

(The highway commissioners)  "To direct the construction and repair of roads and bridges within the town or district, to let contracts, employ labor and purchase material and machinery therefor, subject to the limitations herein provided:  *Provided, however,* that no contract shall be let for the construction or repair of any road or bridge or part thereof in excess of the amount of $200, nor shall any machinery or other appliances to be used in road construction in excess of such amount be purchased without the approval of the county superintendent of highways."  Callaghan's Illinois Law (1913-1916), page 1429, sec. 50, par. B, clause 5.

The duties of the county superintendent of highways so far as they relate to construction and repairs of roads and bridges by towns are as follows:

"Visit and inspect the highways and bridges in each town or district of his county, at least once in each year  *  *  *,  and advise and direct the highway commissioners of the several towns or districts in his county as to the best methods of repair, maintenance and improvement of highways and bridges."

"Keep a record of all contracts or purchases of materials, machinery or apparatus to be used in road construction in excess of two hundred dollars ($200) approved by him in any town or district as hereinafter provided."   Callaghan's Illinois Law (1913-1916), page 1407, sec. 8, clauses 3 and 5.

"The commissioners of highways in each town or district are hereby authorized to contract for the construction and repairing of roads and bridges lying wholly within the limits of their town or district; the cost whereof does not exceed $200.00.  When any contract shall be for a sum in excess of $200.00, the said commissioners shall not let the same without the approval of the county superintendent of highways.  The

county superintendent shall keep a record of all contracts approved by him." Callaghan's Illinois Law (1913-1916), page 1441, sec. 68.

In *City of Ottawa v. People,* 48 Ill. 233, a statute authorizing the construction of two bridges across the Illinois and Michigan Canal, in the City of Ottawa, was under consideration. A writ had been awarded by the Circuit Court, and on appeal the judgment of the Circuit Court was affirmed. The statute authorizing the construction of the bridges had the following proviso in it: "*Provided,* said bridges shall not be built until plans of the same shall be submitted to the Board of Trustees of the Illinois & Michigan Canal (or their successors) and be approved by them." There is no substantial difference in the language used in the statute with reference to the county superintendent of highways approving contracts for construction and repairing of roads and bridges and the language used in the statute then under consideration. The statute now under consideration authorizes the county superintendent of highways to advise and direct the commissioners of highways as to the best methods of repair, maintenance and improvement of highways and bridges, and to approve contracts for the construction and repair of roads and bridges where the cost thereof exceeds $200. It is evident that the superintendent of highways is expected to have had greater experience and to be better qualified in the details of such work than the commissioners of highways. For that reason he is to give his approval to the contract where the work to be done exceeds in value the sum of $200. He is not by these provisions given any part in determining the necessity for the work to be done, nor is he given any authority in determining whether it shall be done. After the commissioners of highways conclude to do the work the county superintendent of highways must approve the contract before it can be let. This is a part of the

detail of the work that is left to the discretion of the commissioner of highways under the order rendered in this case. In carrying out that detail the law requires that the contract, before it can be entered into by the commissioner of highways, must be approved by the county superintendent of highways. This in no way discharges the appellant from the obligation to build the bridge in question.

In this case it appears that the court found the issues in favor of appellee and awarded the writ. In this the court found that the bridge was needed, that the location thereof was in a public highway, that by reason of the bridge being out the road was impassable and that the money necessary for the construction of the bridge is in the hands of the supervisor of the Town of Enfield. It clearly appears from the evidence that a bridge had existed at the place in question. The order of the Circuit Court compels the appellant to build the bridge. The details of that work are left to the appellant subject to such limitations as the statute makes where the contract price exceeds $200. Under these conditions the Circuit Court did not err in requiring the appellant to build the bridge.

Finding no reversible error in the record the order and judgment of the Circuit Court is affirmed.

*Affirmed.*