PEOTONE AND MANTENO UNION DRAINAGE DISTRICT NO. 1

*v.*

JOHN ADAMS.

*Filed at Ottawa November 9, 1896.*

1. DRAINAGE—*what duties of drainage commissioners are mandatory.* The provision of sections 17 and 41 of the Farm Drainage act, (Laws of 1885, p. 78,) that drainage commissioners shall provide main outlets of ample capacity and proper construction for the waters of the district, is mandatory.

2. SAME—*how far discretion of commissioners is controllable.* The discretionary powers conferred upon drainage commissioners by sections 17 and 41 of the Farm Drainage act (Laws of 1885, p. 78,) are not so arbitrary as to bar relief, by *mandamus,* to a land owner entitled thereto, for an injury received through the exercise of such powers.

3. MANDAMUS—*when it lies to compel commissioners to alter a drainage system.* A land owner taxed for the improvement but receiving no benefits from a drainage system determined upon by the commissioners, by reason of the insufficient depth of the outlets provided, may, by *mandamus,* compel the commissioners to so alter the system that his lands will be properly drained.

*Peotone, etc. Drainage District* v. *Adams,* 61 Ill. App. 435, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

This is an appeal from the judgment of the Appellate Court for the Second District, affirming the judgment of the circuit court of Will county   The judgment of the circuit court awarded a peremptory writ of *mandamus* to compel the appellant, the drainage district, to deepen, alter and change a certain drain constructed by it, so as to furnish appellee, the petitioner below, a sufficient outlet for the drainage of his land located within the drainage district.   The answer to the petition for *mandamus,* among other things, alleged that the drainage commissioners considered the request of the petitioner to deepen

his drain, and adjudged and decided that the drain was of sufficient depth and properly constructed, and the question was submitted, by instructions, whether the court had power to compel the drainage commissioners to exercise their discretion in the premises, or whether such discretion was final and not subject to judicial control. Other important facts sufficiently appear in the opinion.

HALEY & O'DONNELL, for appellant:

Before a writ of *mandamus* to enforce performance of an alleged statutory duty will issue the relator must show a right to it, and the statute imposing the duty must be mandatory. *People* v. *Comrs. of Highways*, 53 Ill. App. 442.

Where the law makes the performance of a duty discretionary, a writ of *mandamus* to compel its performance will not lie. *School Inspectors* v. *Grove*, 20 Ill. 526; *People* v. *Hilliard*, 29 id. 413; *People* v. *Gilmore*, 5 Gilm. 242.

Where the performance of a duty by a public officer is discretionary, and depends upon the exercise of his judgment as to its necessity or propriety, the court will not interpose. *People ex rel.* v. *Comrs. of Highways*, 118 Ill. 239.

COWING & YOUNG, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

On the trial of this case in the circuit court the jury found the facts against the appellant. They found that the lands of John Adams, the appellee, cannot be drained into the outlet provided by the drainage district. That finding was approved by the Appellate Court. In speaking of the evidence on this branch of the case the Appellate Court said: "We are of the opinion that it sufficiently appears that appellee had necessity for a tile-drain on his own land for near a quarter of a mile, and that the fall was nothing on his land toward the main tile-drain, but in that distance the fall was the other way about seven inches. This would show that by carrying back of a fall the length of the proposed tile-ditch he could

not give his tile grade from the upper end sufficient to drain his land without running out at the top of the ground before reaching the upper end. He would not have ample capacity, according to the original intention, for the drainage of the waters from his land, comprising about seventy acres. Any one with but little experience would know that from a reading of the evidence, which we think was clearly sufficient to support the verdict of the jury."

Under the statute the facts in favor of appellee are settled by the judgment of the Appellate Court affirming the judgment of the circuit court. The only question, therefore, to be determined here is, whether the court decided correctly on questions of law.

It is claimed by appellant that whether the drainage commissioners would lower the drain, as requested by appellee, involved a question of discretionary power, which courts are not authorized to interfere with by *mandamus*, and this is the only question presented by the record.

The drainage district in which appellee's lands were located was organized under the Farm Drainage act, approved June 27, 1885. (Laws of 1885, p. 78.) Section 17 of this act provides: "Upon the organization of a drainage district the commissioners shall go upon the land and determine upon a system of drainage which shall provide main outlets of ample capacity for the waters of the district, having in view the future contingencies as well as the present." This section of the statute requiring the drainage commissioners to provide outlets of ample capacity for the waters of the district is mandatory. Where the land owners in the district have been assessed and taxed for the purpose of constructing drains or ditches of sufficient depth and capacity to drain their lands, they have a right to insist that the commissioners shall do what the statute says they shall do,--that is, determine upon or adopt a system of drainage which shall provide main outlets of ample capacity for the waters of the dis-

trict.   If a system or plan of drainage is adopted which will not afford outlets of sufficient capacity to drain the lands of the district, the land owner will derive no benefit whatever from the taxation imposed upon him.    This was never contemplated by the legislature.

But if there were any doubt in regard to the obligation and duty imposed on the drainage commissioners, that doubt would be removed by a reference to section 41 of the act, which is as follows: "After the completion of the work the commissioners shall thereafter keep the same in repair; and if they find, by reason of error in locating or constructing the ditches, or any of them, or from other causes, the lands of the district are not drained or protected as contemplated, or some of them receive but partial or no benefit, they shall use the corporate funds of the district to carry out the original purpose, to the end that all the lands, so far as practicable, shall receive their proper and equal benefits as contemplated when the lands were classified.   *   *   *   *Provided,* in all such cases, if sufficient funds are not on hand, the commissioners shall make a new tax levy."   Here, as appears from the evidence, after the drains had been completed there was an error in not constructing the drain deep enough, in consequence of which the lands of appellee could not be drained and his lands received no benefit from the improvement, although he had been taxed to make the improvement.   Under the section of the statute *supra,* where an error has been committed, can the drainage commissioners shield themselves behind what they term a discretionary power, and thus leave the land owner without any remedy whatever?   If they can, the law ought to be repealed at once, in order to prevent others from being imposed upon by its unjust provisions.   But we think the statute gives a negative answer to the inquiry. The statute nowhere says that a discretion exists where a wrong has been committed on one of the land owners, but, on the other hand, it says they shall use the corpo-

rate funds of the district to carry out the original purpose, to the end that all lands shall receive their proper benefits as contemplated when the lands were classified. Under these two sections of the statute we do not think any discretion is vested in the commissioners, but, on the other hand, the duty enjoined is imperative. It may be conceded that the drainage commissioners have a discretion in regard to the location of the drain and in regard to many of the details of the work, but this fact does not change the duty resting on the commissioners to provide sufficient outlets for the waters in the district.

High, in his work on Extraordinary Legal Remedies, (sec. 413) says: "Where, by act of the legislature, the duty is plainly and imperatively incumbent upon the common council of a city to make certain street improvements, the writ will issue for the enforcement of the obligation. Nor does the fact that certain incidents and details of the work are left discretionary with the authorities, as regards the manner of their execution, render the duty less mandatory or constitute a bar to relief by *mandamus.*"

In *Brokaw* v. *Commissioners,* 130 Ill. 482, the same doctrine is laid down. It is there said (p. 490): "It is urged that as the commissioners have charge of the roads in their town they have a discretion in respect to the matter of their management, and that the courts will not coerce them, by *mandamus,* in regard to matters that are placed under their control and left to their discretion. Many of the powers given to the commissioners are discretionary, but in our opinion the power here in question is not of that character. By section 2 of the act it is made their duty to keep the roads of their town in repair, and section 5 requires them to exercise such care and supervision over such roads as the public good may require. The language of section 71 is, 'that the commissioners, after having given reasonable notice, etc., may remove any such fence or other obstruction,' etc. We think it

was intended by the statute to impose upon the commissioners the imperative duty of removing obstructions from the public highway, and that the word 'may' is to be construed as 'shall.' * * * The duty on them to act is imperative, and the discretion given them is merely in respect to a matter which is incidental to the performance of their duty."

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*