(No. 11014.)

PHILIP ADOLPH *et al.* Appellants, *vs.* THE COMMISSIONERS
OF DRAINAGE DISTRICT NO. 2 *et al.* Appellees.

*Opinion filed December 21, 1916—Rehearing denied Feb. 9, 1917.*

1. DRAINAGE—*land owners cannot bind commissioners by con-*
*tracting for particular kind of drain.* Land owners of a drainage
district cannot bind the commissioners by contracting for a tile
drain in consideration of a release or conveyance of the right of
way for the main ditch through their lands, and the commissioners
have power to change the tile drain to an open ditch if they deem
a tile drain inadequate, provided they secure the right of way for
the open ditch by release or condemnation.

2. SAME—*duty of commissioners to provide adequate outlet for*
*waters of district is mandatory.* The Farm Drainage act expressly
confers authority upon the commissioners to correct errors com-
mitted in locating or constructing ditches if it is found that the
system adopted is inadequate to drain or protect the lands of the
district, and the duty to thus provide an adequate outlet for the
waters of the district is mandatory.

3. SAME—*exercise of discretion of drainage commissioners will*
*not be interfered with unless fraudulent and oppressive.* Where no
facts are alleged from which it appears that the drainage commis-
sioners are about to exercise their powers in a fraudulent and op-
pressive manner, a court of equity will not interfere with the ex-
ercise of the discretion of the commissioners as to the relative
merits of an open ditch or tile drain.

APPEAL from the Circuit Court of Logan county; the
Hon. T. M. HARRIS, Judge, presiding.

BEACH & TRAPP, for appellants.

KING & MILLER, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellants, six land owners in Drainage District No. 2 in Prairie township, Logan county, filed a bill against the commissioners of the district praying that said commissioners be enjoined from removing or interfering with a 24-inch tile forming the main outlet for the district and from constructing an open ditch through and across the lands of appellants for the main outlet.

The bill alleges the district was organized under the Farm Drainage act in 1908 and included 1620 acres of land, of which the appellants owned 880 acres. Pursuant to the recommendation of the engineer employed by the commissioners to prepare plats, plans and profiles for the drainage of the lands of the district, the commissioners regularly adopted the recommendations of the engineer and decided upon a 24-inch tile, with catch-basins for the main outlet, and applied to appellants for the right of way through their said lands without expense to the district. Appellants, being desirous that the outlet should be a tile through their lands and in consideration of the fact that the district had adopted that plan and would construct a tile outlet as recommended by the engineer, conveyed to the district the right to enter upon, construct, maintain, use and repair such main tile drain through their lands, which deeds were accepted by the commissioners and the main tile drain constructed through appellants' lands. Laying the tile was completed in November, 1909. Its construction, maintenance and repair cost the district $11,526.28, of which amount the appellant Scully paid $1403.10, Adolph $1117.22, Leavitt $1117.73 and Burke $356.22, while the amounts paid by Schmidt and Spinker are not stated. The bill alleges that the tile was well laid, with the exception of a slight mistake in grade

made by the contractor at one point, which can be remedied at a cost of $200; that it was adequate to drain the lands of the district promptly and efficiently in all ordinary floods and in most of the extraordinary seasons and worked well and efficiently for five years. The bill alleges that the season of 1915 was extraordinarily wet, and the heavy rains flooded and filled the water-courses and outlets in creeks and rivers, so that some lands owned by Patrick Ryan, one of the commissioners, and by A. J. McGough, in the upper portion of the district, the owners claimed, were overflowed for a short period of time. Upon their complaint the commissioners procured a competent engineer to examine the system of drainage and determine whether an additional tile would carry the flood waters off if there should be a recurrence of heavy rains like those of 1915. The engineer, after an examination, reported recommending the correction of the defect in the grade of the main tile, which he said could be made at slight expense, and that by constructing an additional tile, with additional basins to catch the overflow, the waters of the district would be properly carried off in all floods. The commissioners levied a tax of $500, of which appellants paid their *pro rata* share, for the purpose of repairing the defects in the grade of the tile, but it had not been expended for that purpose. At a meeting of the commissioners on January 22, 1916, they adopted a resolution for the construction of an additional tile and for the repair of the defect in grade. In April, 1916, Ryan was elected a commissioner, and he and Herbert, another commissioner, adopted a resolution to take up the 24-inch main outlet tile and in its stead construct an open ditch through the lands of appellants for the main outlet. The bill alleges said commissioners threaten to enter upon appellants' lands, take up and destroy the main tile drain and excavate a large open ditch, and that they will do so unless enjoined. The bill further alleges an open ditch through appellants' lands will cause irreparable damage; that it will overflow

the surrounding land; that the banks will wash and fall in; that debris will accumulate and cause the ditch to become crooked and weeds and marsh grass to grow in and along said ditch and prevent farming the lands across the line of the ditch, thereby causing much additional labor; that it will be a constant source of expense to the district and will decrease the market value of appellants' lands; that the destruction of the tile drain will destroy work that cost the district over $11,000, resulting in damage to appellants which would be irreparable. The bill further alleges that because of a large hill of loose sand in the route of the proposed open ditch it would be impracticable to construct an open drain that would carry the waters of the district in an efficient manner, and that to destroy the main tile drain and construct an open ditch would be a gross injustice and a fraud upon the rights of appellants. The bill also alleges that Patrick Ryan, one of the commissioners, is moved by a personal dislike and ill-will toward some of the appellants.

The bill was filed June 13, 1916, to the September term, 1916, of the circuit court. The May term was still in session when the bill was filed, and a motion was made in open court for a temporary injunction. The court set the motion for hearing June 22. No answer, plea or demurrer was filed by appellees and the motion was heard on the bill, only. The temporary writ was denied and an order entered at the same time dismissing the bill for want of equity. Appellants have brought the record here by appeal.

Appellants' position is that the drainage commissioners had the right and authority to contract with the land owners to construct a tile drain; that after they had adopted that system and constructed the same, which was ample to carry off the water under ordinary floods and most of the extraordinary floods and could at a moderate expense be made sufficient for extraordinary floods, they could not change the system to an open ditch, involving many thousands of dollars damages to the land owners; also that the

change would operate as a gross injustice and fraud upon the rights of appellants, and that upon that ground equity would enjoin the change. It is insisted that the deeds by appellants to the commissioners for the right of way were made in consideration that there was to be constructed and maintained a tile drain outlet, which was a covenant and contract binding on the district when the deeds were accepted and could not be changed without the consent of appellants.

The bill concedes that in time of floods such as occurred in 1915 the outlet tile is inadequate, but it alleges that an additional tile could be laid at a reasonable expense which would furnish adequate outlet in flood times, and that the commissioners, prior to the election of Ryan, in April, 1916, decided upon and proposed to adopt that plan. There is no question of the correctness of appellants' contention that the commissioners, at the time the district was organized, had full power and authority to adopt, as a part of the system of drainage, a tile drain outlet and to procure from the land owners the right of way to lay and maintain such tile drain outlet. The contention, however, that when the right of way is secured by release or conveyance from the land owners and the tile laid it must be perpetually maintained as a tile drain outlet and can never be changed to an open ditch without the consent of the land owners we think is untenable. Section 17 of the Farm Drainage act provides that the commissioners shall go upon the land and determine upon a system of drainage "which shall provide main outlets of ample capacity for the waters of the district, having in view the future contingencies, as well as the present." Preference is to be given tile drains when they will accomplish the purpose and open drains when deemed necessary. Section 41 requires the commissioners, after the completion of the work, to keep it in repair, and if they find, by reason of error in locating the ditches or any of them, "or from any other causes the lands of the district

are not drained or protected as contemplated, or some of them receive partial or no benefit, they shall use the corporate funds of the district to carry out the original purpose to the end that all the lands, so far as practicable, shall receive their proper and equal benefits as contemplated when the lands were classified." The commissioners were authorized to employ a competent engineer to assist them in laying out the work, and they have a reasonable discretionary power in adopting the plan and system of drainage. Preference is required by the Farm Drainage act to be given tile drains where they will accomplish the purpose, but the commissioners are not bound to adopt them if in the exercise of a reasonable discretion they deem that system inadequate. In *Langan.* v. *Drainage District,* 239 Ill. 430, this court quoted from *Peotone Drainage District* v. *Adams,* 163 Ill. 428, where it was held, in substance, that where the land owners of a district have been assessed and taxed for the construction of drains and ditches sufficient to drain their lands they have a right to require the commissioners to do what the statute says they shall do, determine upon and adopt a system of drainage which will provide main outlets of ample capacity for waters of the district, and "if a system or plan of drainage is adopted which will not afford outlets of sufficient capacity to drain the lands of the district the land owner will derive no benefit whatever from the taxation imposed upon him. This was never contemplated by the legislature." It was held the statute required ample outlet to drain the waters from the district, and the commissioners could not shield themselves behind a discretionary power and leave the land without adequate drainage; that the statute required the use of the corporate funds of the district for the purpose of correcting an error where the system adopted proves inadequate.

If the commissioners, in the exercise of their discretionary power to determine upon a system of drainage, find they have committed an error and that the system adopted

is inadequate to provide drainage of the waters from the lands of the district, their powers are not exhausted, notwithstanding they have secured from the land owners the right of way for the ditches. It is, of course, true that the release of the right of way for the outlet originally adopted would not authorize taking or damaging land for an open ditch outlet, but the right to construct the open ditch must be secured by release or condemnation. It is the mandatory duty of the commissioners to provide an outlet of ample capacity for the waters of the district, and the performance of this duty can be compelled by *mandamus*. (*Langan* v. *Drainage District, supra.*) The statute expressly confers authority upon the commissioners to correct errors committed in locating or constructing the ditches, or any of them, if it is found that the system adopted is for any cause inadequate to drain or protect the lands of the district. The bill concedes that the outlet adopted by the commissioners in this case is inadequate and that some other or further provision is required to be made. The power to determine what provision shall be made to correct the error in the original plan is a power that is to be exercised within the discretion of the commissioners, and their exercise of that power will not be controlled by a court of equity unless it clearly appears that it is proposed to exercise it in a fraudulent and oppressive manner. While the bill alleges the construction of an open ditch will be a gross fraud upon and injustice to the appellants, no facts are alleged in this case from which it appears that any such exercise by the commissioners of their powers is proposed, and a court of equity will not, in the absence of fraud or oppression, undertake to determine the relative merits of two proposed systems. That must be left to the lawful determination of the authorities charged with that duty.

The decree of the circuit court is affirmed.

*Decree affirmed.*