be deprived of his commissions because the seller takes up and completes the negotiations himself or through another party.

2. BROKERS, § 90*—*when finding against right to commissions not sustained by the evidence.* In an action to recover commissions on a sale of real estate, a finding for defendants *held* against the weight of the evidence, it appearing that the defendants sold the property to a person with whom the plaintiffs had negotiated to sell the property and had introduced him to defendants as a prospective purchaser.

---

**James B. Madsen, trading as J. B. Madsen & Company, Plaintiff in Error, v. N. B. Cordell, Defendant in Error.**

**Gen. No. 19,089.   (Not to be reported in full.)**

Error to the Municipal Court of Chicago; the Hon. HARRY P. DOLAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Affirmed. Opinion filed October 7, 1914.

**Statement of the Case.**

Action by James B. Madsen, trading as J. B. Madsen & Company, against N. B. Cordell to recover a balance alleged to be due for certain trade fixtures and certain extras sold and delivered to the defendant for the equipment of a butcher shop. Defendant filed his affidavit of merits wherein he claimed a set-off by reason of the failure of plaintiff to furnish a sufficient ice box and the refusal of defendant to accept the ice box furnished by the plaintiff. A trial by the court resulted in a finding in favor of defendant upon his claim of set-off, and judgment was entered against plaintiff for $83. To reverse the judgment, plaintiff brings error.

The order for the fixtures was given June 24, 1912. The ice box included in the order was not installed ready for the reception of ice until July 12 or 13,

*See Illinois Notes Digest, Vol    XV, and Cumulative Quarterly, same topic and section number.

1912, and some extras necessary for the proper equipment of the ice box were not supplied and installed until August 19, 1912. On July 18, 1912, defendant in error paid plaintiff in error on account $400. It was conceded that the charge for the ice box, which was included in the total amount of $540 stated in the original order, was $282. The ice box was manufactured by plaintiff in error in his factory in sections and was so delivered on the premises of defendant in error, where the several sections were united and the doors and partitions installed by the employees of plaintiff in error.

It was uncontroverted that after defendant in error commenced to use the ice box for the storage of meat the lowest temperature obtainable was from 44 to 54 degrees, and that the temperature required for the proper preservation of meat is from 38 to 40 degrees. It was also uncontroverted that on August 20, 1912, defendant in error observed a crack or opening 1 1/16 inches in width in the rear of the ice box, occasioned either by the separation of the sections forming its construction, or the coming apart of the matched flooring of which the several sections were constructed. There was evidence that the ice box was wholly inefficient to serve the purpose for which it was designed, and that defendant in error repeatedly complained to plaintiff in error of the failure of the ice box to maintain the proper temperature, and of the defective workmanship and material resulting in the openings or cracks in the rear of the ice box and of its defective condition in other particulars, and that plaintiff in error disregarded such complaints and made no attempt to remedy the defects complained of. On September 20, 1912, defendant in error removed the ice box from his butcher shop to the rear of his premises and refused to accept the same upon his order therefor.

It is insisted on behalf of plaintiff in error that there was an acceptance by defendant in error of the ice box

in question: First, by his several receipts for the various portions of the ice box, as being in good order when they were delivered at his shop, and by the several "O.K.'s" by defendant in error upon time cards which plaintiff in error required his mechanics to furnish in order that they might receive credit for the time employed by them in the performance of their work; and second, by his having used the ice box from the time it was installed in his shop in July or August, 1912, until September 20, 1912.

STEDMAN & SOELKE, for plaintiff in error.

JOHN J. SWENIE and M. R. HARRIS, for defendant in error; T. F. MONAHAN, of counsel.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

## Abstract of the Decision.

1. SALES, § 251*—*when implied warranty that article is fit for purpose designed.* Where a manufacturer contracts to supply an article which he manufactures for a particular purpose designed by the buyer and known to the vendor, so that the buyer necessarily trusts to the judgment or skill of the manufacturer, there is an implied warranty that the article shall be reasonably fit for the purpose to which it is to be applied.

2. SALES, § 279*—*when signing good order receipt not waiver of implied warrants.* The fact that a buyer of an article signed a good order receipt of the several fragments of the article when delivered by a teamster, *held* not to estop the buyer from denying that the article would comply with an implied warranty when the fragments are assembled.

3. SALES, § 276*—*time within which goods may be returned for breach of warranty.* A buyer of an article has a reasonable time within which to reject it after it has failed to comply with an implied warranty; and in determining what is such a reasonable time, the conduct of the seller, and what he said and did, may be taken into consideration.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.