CHICAGO—FIRST DISTRICT—DECEMBER, 1920.   383

Am. Spiral Pipe Wks. v. Universal Oil Prod. Co., 220 Ill. App. 383.

# American Spiral Pipe Works, Appellant, v. Universal Oil Products Company, Appellee.

## Gen. No. 25,590.

1. EVIDENCE, § 350*—*when parol evidence is admissible to add to contract.* A separate parol agreement as to any matter, not inconsistent with the terms or legal effect of a written agreement and on which it is silent, may be shown where it appears that the written instrument was not intended to be a complete and final statement of the whole transaction between the parties.

2. APPEAL AND ERROR, § 1301*—*what will be presumed as to evidence in trial by court.* Where there is evidence in a record on which a court would have been justified in basing its findings, no improper or immaterial evidence will be presumed to have influenced the court in reaching a decision where the cause was tried without a jury.

3. SALES, § 252*—*when implied warranty exists.* Where the buyer expressly or by implication makes known to the seller the particular purpose for which goods are required, and it appears that the buyer relies on the seller's skill or judgment in manufacturing the article agreed to be purchased, there is an implied warranty that the article so agreed to be purchased shall be reasonably fit for such purpose.

4. SALES, § 283*—*when existence of implied warranty is for jury.* Whether a buyer made known to the seller the particular use for which the goods were intended and whether the buyer relied upon the seller's skill and judgment are both questions of fact.

5. SALES, § 271*—*when breach of warranty is established.* Where plaintiff ordered oil stills, for use at its oil refining plant, from the defendant, who was a manufacturer of this particular kind of articles for the use in the business of refining oil and the evidence showed that the stills were not manufactured in accordance with the specifications prepared by the plaintiff's engineer and did not stand the hydraulic pressure test provided for, there was a breach of the implied warranty that the stills would be reasonably fitted for the use for which they were bought.

6. SALES, § 275*—*when return of goods shows no delivery.* Where the buyer, within a reasonable time after the delivery of goods, returned the same to the manufacturer on account of defective material and defective workmanship, and informed the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

manufacturer of the specific defects, and the manufacturer accepted the return of the goods after such defects were pointed out, the property in the goods did not pass to the buyer at the time of delivery.

7. SALES, § 275*—*what tests may be made by buyer before return of goods.* Where tests are provided for in the contract of sale, the buyer has a right to a full test and reasonable time in which to make it.

Appeal from the Municipal Court of Chicago; the Hon. WELLS M. COOK, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1919. Affirmed. Opinion filed December 31, 1920.

BEN N. BREEDING and GEORGE H. MASON, for appellant.

JUDAH, WILLARD, WOLF & REICHMANN, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Plaintiff below, who is appellant here, appeals from a judgment for $3,500 entered in favor of the defendant on a claim of offset. The controversy between the parties arises out of the manufacture by plaintiff for defendant of five oil stills for the use of the defendant at its oil refining plant in Independence, Kansas. The stills were manufactured and, after preliminary tests of at least three of them in the presence of a representative of the plaintiff's engineer, were shipped from plaintiff's factory at Chicago to the defendant at Independence on February 28, 1917, where they arrived about the middle of March.

April 3 thereafter defendant wrote plaintiff a letter inclosing a check for $3,500 "on account" and stating: "While this material has arrived at Independence, we have had no opportunity whatsoever to go over same or make a test." April 18 plaintiff was notified of alleged defects in the stills, and its president, in response to such notice, went to Independence, where the stills were examined in his presence by

defendant's experts and the alleged defects pointed out. The stills were thereupon returned to the plaintiff at Chicago. The defendant in a letter dated April 27 stated: "We are enclosing bill of lading covering the five (5) stills which you shipped to us at Independence, Kansas, and which are being returned to you for correction."

Attempts were made by the plaintiff to remedy the alleged defects, but this was never accomplished, and the stills remain in the possession of the plaintiff.

The plaintiff on June 26, 1917, rendered an additional bill to the defendant of $1,609.03, $1,500 of this amount being for altering the stills "and testing them in accordance with instructions," and $109.03 for freight paid from Independence to Chicago. After repeated demands plaintiff sued for the balance of the purchase price and for its claim for repairs and freight as stated.

The defendant, by way of defense, denied its liability, and in an offset filed alleged breach of a warranty by plaintiff that the stills would be reasonably fitted to be used for the purpose for which they were bought, and claimed the right to have the purchase money which had been paid by it returned with interest. The cause was tried by the court without a jury. Propositions of law were submitted by the parties. The court found the issues for the defendant and allowed its claim of offset in so far as it demanded a return of the purchase money, and entered judgment on the finding for that amount against the plaintiff.

The court, against the contention of plaintiff, held that the contract for the construction of the stills consisted of a series of correspondence by and between the parties through Martin C. Schwab, engineer of the defendant, and that certain specifications contained in the blueprint described as defendant's exhibit 1 formed the basis of the contract between the parties.

Plaintiff argues that a letter in evidence dated October 3, 1916, written by plaintiff to defendant, together with plaintiff's reply thereto under date of October 11, 1916, stated the entire written contract between the parties, and that therefore evidence of oral conversations between the parties as to the subject-matter of the contract was inadmissible to vary its terms. An examination of the evidence discloses, however, that these letters do not purport to contain the whole of the contract, and that the facts bring the case within the qualification of the general rule as stated in *Fuchs & Lang Mfg. Co. v. R. J. Kittredge & Co.*, 242 Ill. 88, that:

"A separate parol agreement as to any matter not inconsistent with the terms or legal effect of the written agreement, and on which it is silent, may be shown, where it appears that the written instrument was not intended to be a complete and final statement of the whole transaction between the parties."

We think the court did not err in admitting this evidence. Appellant claims other errors in admitting evidence, but of these it is sufficient to say that the trial was by the court without a jury, and that there is in the record other evidence on which the court would have been justified in basing its findings, and we think the rule that no improper or immaterial evidence will be presumed to have influenced the court in reaching a decision, where the case was tried without a jury, must be applied. *Kreiling v. Nortrup*, 215 Ill. 195; *Bradford v. Clower*, 60 Ill. App. 55; *Supreme Council American Legion of Honor v. Stewart*, 106 Ill. App. 605; *Rogers Grain Co. v. Shepherd*, 116 Ill. App. 532; *Pierce v. Jacobs*, 157 Ill. App. 441.

The specifications for the stills provided that the surface flanges should be "machine faced and smooth tool finished"; that each still and nozzle should be "extra heavy built to carry 250 pounds working pressure continuously"; that the stills "shall be built using a factor of safety of not less than ten"; that

before shipment each of the stills should be tested under a hydraulic pressure of 750 pounds, under which no part of the stills should develop any structural weakness or defect, and that the test should be made in the presence of a representative of the consulting engineer.

It is found by the court and established by the evidence that the plaintiff did not manufacture, construct or erect the five oil stills in accordance with the specifications of the contract, as we have found it to be; that the same were not safe to be used for the purposes and uses for which the same were designed and intended to be used by defendant; that the workmanship in the welding in each of the stills was defective because of openings and crevices therein, and that each of the stills was also defective in that the flanges of the heads became and are permanently distorted, and that under the hydraulic pressure test of 750 pounds provided for by the contract, the flanges developed structural weaknesses, and became or are permanently dished or bent; and that material furnished was defective.

The court further found that the defendant notified the plaintiff of the intended purpose or use to which the stills were to be put, and that the stills were thereafter manufactured, and that the said five oil stills and each of them were not safe for the use and purpose for which they were intended to be used, and of which the plaintiff had notice or knowledge; and that within a reasonable time after the delivery of the stills to it the defendant rejected and returned the stills; and the court in the seventh proposition held the law applicable to be that if the buyer expressly or by implication makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment in manufacturing the article agreed to be purchased, there is an implied warranty that the

article so agreed to be purchased shall be reasonably fit for such purpose; and the court refused to hold propositions as submitted by the plaintiff to the effect that there was no implied warranty under the circumstances that the stills should be fit for the purpose for which they were intended by the buyer.

The law by which the rights of the parties must be determined is found in the "Uniform Sales Act," in force July 1, 1915, Hurd's Revised Statutes, ch. 121a [Callaghan's 1916 Stat. ¶ 10021(1) et seq.]. Section 12 of that Act [Callaghan's 1916 Stat. ¶ 10021(15)] defines an express warranty and sections 14 and 15 [Callaghan's 1916 Stat. ¶¶ 10021(17), 10021(18)] state the law with reference to implied warranties.

It is the contention of the appellant that subsection 4 of said section 15 [Callaghan's 1916 Stat. ¶ 10021(18)] states the law applicable to this case to the effect:

"In the case of a contract to sell or a sale of a specific article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

While appellee contends that subsection 1 applies, it provides that:

"Where the buyer expressly or by implication makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not) there is an implied warranty that the goods shall be reasonably fit for such purpose."

We think subsection 4 is clearly inapplicable, because these oil stills were not sold either under a patent name or other trade name. That subsection of the law simply restates the well-settled rule of the common law in regard to the sale of a known, described and definite article. Williston on Sales, sec. 248, p. 336.

But the appellant contends that subsection 1 is not

applicable, first, because the defendant did not make known to the plaintiff the particular use for which the stills were intended; and, second, because there is no evidence that the defendant relied upon plaintiff's skill and judgment; and in the third place, considering sections 14 and 15 together, it is said that if there was any warranty it was only "that the goods shall correspond with the description." In other words, appellant insists that the implied warranty as to fitness does not extend to cases where a "special thing is ordered."

Whether appellee made known to appellant the particular use for which the stills were intended, and whether appellee relied upon plaintiff's skill and judgment, were both questions of fact which the holdings of the trial court indicate were found adversely to appellant. An examination of the evidence shows, we think, that the trial court was justified in so finding.

While the plans and specifications were prepared by appellee's engineer, these specifications described the test which the stills, as constructed, must be able to withstand, and the evidence shows that the stills as manufactured did not stand such test. The thickness of the material to be used was not prescribed by the specifications, but on the contrary was left to the judgment of the manufacturer.

There is no evidence that the plans or specifications submitted by defendant were responsible for any one of the defects in material, workmanship or construction. We think, therefore, that the facts show that in the respect in which defects are claimed, the buyer in this case relied upon the judgment, skill and honesty of the seller, who as the manufacturer of the article would naturally be depended upon in these respects.

That the manufacturer also knew the purpose to which the stills would be put is abundantly established by the evidence. It was a manufacturer of this particular kind of articles for use in the business of

390 APPELLATE COURTS OF ILLINOIS.

Am. Spiral Pipe Wks. v. Universal Oil Prod. Co., 220 Ill. App. 383.

refining oil and had been represented to defendant as the best manufacturer in the country to do this work. Making products of this kind and for this use was its business, and plaintiff's president says there were only two other concerns in the country that could do this kind of work.

In support of its contention that there is no implied warranty as to fitness, appellant cites *Fuchs & Lang Mfg. Co. v. R. J. Kittredge & Co., supra,* where the court said:

"This rule (of fitness for the purpose intended) is limited to cases where an article is ordered for a special purpose, and does not apply to cases where a special thing is ordered, though it is intended for a special purpose."

Plaintiff also cites *Chicago Steel Foundry Co. v. Andresen-Evans Co.,* 199 Ill. App. 369, and *Kersten v. West Coast Roofing & Mfg. Co.,* 204 Ill. App. 447. These decisions, however, do not purport to construe this subsection of the Sales Act, but we think an oil still such as one of these is not such a "special thing" as is referred to in that opinion. Indeed, the general rule is there stated to be:

"Where a manufacturer contracts to supply an article which he manufactures for a particular purpose designed by the buyer and known to the vendor, so that the buyer necessarily trusts to the judgment or skill of the manufacturer, there is an implied warranty that the article shall be reasonably fit for the purpose to which it is to be applied."

To the same effect are *McKeown v. Dyniewicz,* 83 Ill. App. 509; *Madsen v. Cordell,* 188 Ill. App. 564; *New Idea Arc Light Co. v. G. C. Renneker Co.,* 195 Ill. App. 290. These cases, as well as those on which appellant relies, were decided prior to the enactment of the statute which must control here; but we think they are in harmony with it.

In so far as the stills in question were "special things," that is, in so far as the specifications, plans,

etc., were the work of appellee's engineers, there would be no implied or express warranty; but, as said, the facts do not indicate any defects in these respects. Concerning this subsection the learned author of Williston on Sales says, sec. 248, p. 336:

"It would be unfortunate if the section should be narrowly construed, and had it not already received a liberal construction in England, a construction which it may be assumed American courts would follow, it would be undesirable to copy the English legislation in this matter."

We think it must be held that subsection 4 is applicable and that an implied warranty that the stills would be reasonably fitted for the use for which they were bought existed under the facts in this case.

Appellant contends, however, that there was such an acceptance of the stills by appellee as to preclude defendant, and to amount to an admission that the stills were satisfactory, and a waiver of all claims for damages for any defects ascertainable upon such test and inspection. On this point appellant cites a number of cases holding in effect that in the absence of fraud or latent defects an acceptance of an article sold upon an executory contract, after an opportunity to examine it, is a consent and agreement that the quality is satisfactory, and as conforming to the contract, and that it bars all claims for any defects that may exist in the article, citing with other cases *Wolf Co. v. Monarch Refrigerating Co.*, 252 Ill. 491. The law applicable to this point is also covered by the Uniform Sales Act, section 69 of which declares the remedies of the buyer for breach of warranty. Paragraph "d" [Callaghan's 1916 Stat. ¶ 10021(72)] provides as one of these remedies that the buyer may:

"Rescind the contract to sell or the sale, and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller, and recover the price or any part thereof which has been paid."

Subsection 2 of paragraph 69 [Callaghan's 1916 Stat. ¶ 10021(72)] provides that when the buyer has claimed or been granted a remedy in any one of the ways prescribed in the section, no other remedy can thereafter be granted. And subsection 3 provides that "where the goods have been delivered to the buyer he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of his election to rescind, or if he fails to return or offer to return the goods to the seller in substantially as good condition as they were in at the time the property was transferred to the buyer."

Subsection 4 provides that where a buyer is entitled to rescind the sale and elects to do so, the buyer shall cease to be liable for the price upon returning or offering to return the goods, and that if the price or any part thereof has already been paid, the seller shall be liable to repay so much thereof as has been paid concurrently with the return of the goods or immediately after an offer to return goods in exchange for the repayment of the price. Section 48 [Callaghan's 1916 Stat. ¶ 10021(51)] defines what acts shall constitute acceptance, which may be brought about by admitting to the seller the acceptance of them, or when the goods have been delivered "he does any act in relation to them, which is inconsistent with the ownership of the seller, or when after the lapse of a reasonable time the goods are retained without intimating to the seller that they are rejected."

The eleventh proposition as held by the court is that the defendant, within a reasonable time after the five oil stills were delivered to it at Independence, Kansas, returned the same to plaintiff on account of defective material and defective workmanship; that defendant notified and informed the plaintiff of the specific defects, and that the plaintiff accepted the return of the five oil stills after such defects were

pointed out. If this holding is justified under the evidence, then under the law, as above stated, we think the contention of appellant could not be sustained.

It appears from the evidence that three of the stills were tested in the presence of one of defendant's engineers in Chicago, and we think that the evidence also establishes that the engineer had the opportunity to inspect all of them prior to the shipment. There is, however, no evidence that he had authority from the defendant to make a final acceptance of the stills, or that he knew of any breach of the warranty at that time. The evidence is, we think, inconsistent with the theory that the final examination and acceptance of the stills should be made by the engineer in Chicago. It appears that the plaintiff recognized this to be true, for when it was notified of the alleged defects its president at once volunteered to go to Independence, Kansas, and did so. We have examined the evidence of what occurred there with considerable care. All of the witnesses agree that an examination of the stills was there made in the presence of plaintiff's president; that the defects were pointed out to him, and several witnesses testified that he admitted the defects and suggested they would be remedied if the stills were returned to Chicago. It is undisputed that they were returned and that plaintiff paid freight for their return. This seems inconsistent with the theory for which plaintiff now contends, that the property in the goods had at that time passed to the defendant.

Defendant had a right to a full test and reasonable time in which to make it. Williston on Sales, p. 834, sec. 475. An intelligent examination of the stills could only be made by an expert, and the expert on whom defendant relied was absent when the stills arrived at Independence. We think a preponderance

of the evidence indicates that plaintiff acquiesced in the rejection and the return of the stills.

The contention of appellant that the set-off could not be allowed because no damages were proved cannot be sustained in view of the provisions of the statute as stated above.

The judgment will be affirmed.

*Affirmed.*

BARNES, P. J., and GRIDLEY, J., concur.