**BUILDERS WINDOWS, INC., an Illinois corporation, Plaintiff-Appellant,**

v.

**CECO STEEL PRODUCTS CORPORA-TION, a Delaware corporation, Defendant-Appellee.**

**No. 12751.**

United States Court of Appeals Seventh Circuit.

Jan. 20, 1960.

Rehearing Denied March 2, 1960.

Charles W. Stiefel, Jr., Holmes Baldridge, Chicago, Ill., for plaintiff-appellant.

Charles J. O'Laughlin, Anan Raymond, Thomas W. McNamara, Chicago, Ill., for defendant-appellee, Thompson, Raymond, Mayer, Jenner & Bloomstein, Chicago, Ill., of counsel.

Before HASTINGS, Chief Judge, and DUFFY and MAJOR, Circuit Judges.

DUFFY, Circuit Judge.

Plaintiff, Builders Windows, Inc. (Builders), is a distributor of aluminum and other type windows. Ceco Steel Products Corporation (Ceco), is a manufacturer of metal products including aluminum sliding windows. By an agreement in writing dated November 7, 1955, Builders became the exclusive distributor in the Illinois counties of Cook, Lake, DuPage and Kane for aluminum sliding windows to be manufactured by Ceco. The term of the agreement was three years. By its amended complaint, Builders charged a breach of this distributorship contract.

Defendant moved to dismiss the amended complaint. The plaintiff agreed to a dismissal of paragraph 13. The Court ordered that paragraphs 4 through 10, and paragraph 12, be stricken. Plaintiff elected to stand on paragraphs 4 through 10, and paragraph 12. The Court found there was no just reason to delay the entry of final judgment for the defendant as to the issues raised by the parts of the complaint stricken, and directed that final judgment be entered for defendant as to said issues.

The agreement of November 7, 1955, was attached to the complaint as an exhibit. Pertinent parts of said agreement with the designation of the number of the paragraph where the provisions may be found are: 1) Ceco agrees to sell to Builders exclusively aluminum sliding windows as manufactured by Ceco for use in residential construction consisting of single family dwellings and one and two story apartment buildings in four specified counties in Illinois, which aluminum sliding windows were to be resold by Builders for use in said described territory. 2) Ceco reserved the right to sell aluminum sliding windows in said territory for use in construction projects other than of the residential type. 4) Builders agreed to buy from Ceco its entire requirements of aluminum sliding windows, and also other types of windows for resale to the list of persons designated in the contract; Builders was permitted to purchase from General Bronze Corporation such windows as were reasonably required to enable Builders to dispose of its existing inventory and which were not available from Ceco. 10) "During the period of January 1, 1956 to December 31, 1956, this agreement shall not be cancelled by either party except by mutual agreement. Thereafter this agreement may be cancelled by either party giving 60 days written notice to the other party for the following reasons: * * * (b) By Ceco whenever the aggregate dollar amount of orders placed with Ceco by Builders during the part of any year beginning January 1 and ending August 31 does not equal the sum of $250,000."

On February 5, 1957, Ceco notified Builders in writing that it was terminating the contract effective April 6, 1957, because of the failure of Builders to order $250,000 of Ceco's product during the period January 1 through August 31, 1956. Thereafter, Builders instituted this suit for damages claiming wrongful breach of the contract. In its answer, Ceco claimed that under paragraph 10(b) of the contract, it had the right to cancel at any time after January 1, 1957, for failure of Builders to order a minimum of $250,000 of Ceco's products from January 1 to August 31, 1956. Ceco alleged its total actual sales to Builders was $106,721 for the eight-month period, and $152,302 for the entire year of 1956.

There is no dispute that the contract was not subject to cancellation in 1956 except by mutual agreement. The first issue to be decided is whether the first eight-month test period was in 1956 or in 1957. By striking paragraph 12 of the complaint, the District Court held, in effect, that the first eight-month test period was in 1956, and thus sustained Ceco's viewpoint.

If Ceco's interpretation is correct, then on September 1, 1956, the underlying conditions requisite to a cancellation of the contract existed because, up to that date, Builders had not ordered Ceco products in the amount of $250,000. However, under that interpretation, Ceco could not do anything about giving a notice of cancellation on September 1st because there was a period extending through the last four months of 1956 and the first sixty days of 1957 during which a cancellation could not become effective. It is difficult to believe that such a complicated and unworkable situation was the intention of the parties.

Under the general scheme or plan of the contract, after completion of a test period composed of the first eight months of the year and during which period plaintiff's orders from Ceco did not

reach $250,000, Ceco could give a 60 day written notice of cancellation. If Ceco desired to cancel, it is reasonable to assume that notice of cancellation would be promptly forthcoming.

■ However, both parties had in mind that Builders had an inventory on hand. Whether this was large or small, we do not know. This inventory consisted of windows and other products which had been manufactured by General Bronze Corporation. Both parties were agreeable to the idea that Builders should have the opportunity to dispose of that inventory during the year 1956. Such a course would necessarily lessen the amount of purchases by Builders from Ceco. The size of the inventory and the effort which would be required to dispose of same might be an important element in ascertaining the intention of the parties. We think it might be a reasonable interpretation that Builders was not required to meet a minimum sales quota in 1956. At least, the provisions of the contract hereinbefore discussed demonstrates that an ambiguity does exist. Under the circumstances, the District Court should receive oral testimony to resolve that ambiguity. It was therefore error to have stricken paragraph 12 of the complaint.

Builders also contends its failure to purchase Ceco merchandise totaling $250,000 from January 1 to August 31, 1956, was not its fault, but was due directly to Ceco's failure to manufacture and deliver to Builders any aluminum windows which were either saleable for or capable of being used in single family dwellings. The amended complaint alleged that in the territory reserved to Builders under the contract, during the period from January 1 to December 31, 1956, contractors or others who built single family units constructed more than 75% of such dwellings of masonry veneer; that such buildings were intended to and were sold subject to mortgages to the United States Veterans Administration, or the United States Federal Housing Administration, and that Ceco well knew that more than 70% of Build-

ers' sales of aluminum sliding windows in that territory would be to contractors and others who were engaged in the construction of masonry veneer single family dwellings.

The amended complaint alleged further that one of the minimum requirements under Federal Housing Administration regulations was that in constructing single family dwellings of masonry veneer, the builder must provide a one inch air space between the veneer and the sheathing, and that this could not be done if Ceco's aluminum sliding windows were installed. Builders argues that this was a violation of an implied warranty of fitness under Section 15, sub-paragraphs (1) and (5) of the Illinois Sales Act. [Ill.Rev.Stats.1957, Ch. 121½, § 15(1, 5) ]

Builders cites such cases as American Spiral Pipe Works v. Universal Oil Products Co., 220 Ill.App. 383, 388, and J. P. Seeburg Piano Co. v. Lindner, 221 Ill. App. 94, 96, for the proposition that an implied warranty of fitness applies when the seller has been informed, either expressly or by implication, of the purposes for which the goods were bought and where the buyer has relied upon the seller's skill and judgment.

■ We think the Trial Court properly struck paragraphs 4 through 10 of the amended complaint. We have here a manufacturer-distributor relationship created by the agreement. Paragraph 1 thereof expressly provides: " * * * Ceco agrees during the term of this agreement to sell to Builders exclusively aluminum sliding windows *as manufactured by Ceco* (emphasis supplied) for use in residential construction consisting of single family dwellings and one and two story apartment buildings * * *." Nowhere in the contract is there any specification or requirement regarding the type of product which Ceco was to manufacture. The agreement was that Builders would sell Ceco's product. Builders does not suggest there was any defect in material or workmanship in Ceco's windows. Basically, the claim is that if Ceco's windows had been designed

differently, they would have received greater consumer acceptance in the Chicago area. We hold this is not a situation where reliance may be had upon an implied warranty of fitness under the Illinois Sales Act.

The action of the District Court in striking paragraphs 4 through 10 of the amended complaint is affirmed. The action of the District Court in striking paragraph 12 of the amended complaint is reversed.

Affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.