BUILDERS WINDOWS, INC., an Illinois corporation, Plaintiff,

v.

CECO STEEL PRODUCTS CORPORATION, a Delaware corporation, Defendant.

Civ. A. No. 57 C 914.

United States District Court
N. D. Illinois, E. D.

Sept. 26, 1962.

**377**

Charles W. Stiefel, Jr., and Holmes Baldridge, of Stiefel, Greenberg, Burns & Baldridge, Chicago, Ill., for plaintiff.

Anan Raymond, Edward E. Lynn and Thomas P. Sullivan, of Thompson, Raymond, Mayer, Jenner & Bloomstein, Chicago, Ill., for defendant.

MINER, District Judge.

This matter having come on before the Court pursuant to mandate of the United States Court of Appeals for the Seventh Circuit remanding the matter for the taking of additional evidence and the making of certain additional determinations (opinion reported at 274 F.2d 311, 7 Cir.,), and the Court having fully tried all issues pursuant to the said mandate, and the Court having considered all the evidence in the cause, and the Court having examined and considered the respective contentions of counsel presented orally and in writing, and the Court being fully advised, the Court enters its Findings of Fact and Conclusions of Law, as follows:

### FINDINGS OF FACT

1. Defendant is a manufacturer and distributor of metal products, including windows, on a national basis. Plaintiff is a distributor of window products in the Chicago region.

2. On November 7, 1955, plaintiff and defendant entered into a written contract under the terms of which plaintiff was to become the exclusive distributor in the Counties of Cook, Lake, DuPage and Kane, within the State of Illinois, of aluminum sliding windows manufactured by defendant for use in residential construction consisting of single family dwellings and one and two story apartment buildings containing no more than ten family units per building.

3. The contract provided further that during its term defendant would sell to plaintiff for resale to a specific list of enumerated persons specific other window products manufactured by defendant consisting of aluminum casement windows, steel casement windows, aluminum double hung windows, steel basement windows, and metal frame screens for all of these types of windows when used for residential construction as defined in finding number two herein.

4. The contract provided that plaintiff was to buy its entire requirements of aluminum sliding windows and other types of windows from defendant, but that plaintiff could buy from General Bronze Corporation such windows as were reasonably required to enable plaintiff to dispose of its existing inventory if such windows were not available from defendant.

5. The contract was to be in effect for a term of three years beginning on January 1, 1956, and ending on December 31, 1958, with the privilege of extension for further periods thereafter upon the mutual consent of the parties.

6. The contract provided that during the period January 1, 1956 to December 31, 1956, the agreement could not be cancelled by either party except by mutual consent, but that, thereafter, it might be cancelled by defendant upon sixty days written notice whenever the aggregate dollar amount of orders placed with defendant by plaintiff during the part of any year beginning January 1 and ending August 31 did not equal the sum of $250,000.00.

7. On February 5, 1957, defendant notified plaintiff in writing that the contract was cancelled effective as of April 6, 1957, because of plaintiff's failure to purchase $250,000 of defendant's products during the eight month period January 1 through August 31, 1956.

8. At the time the contract was negotiated plaintiff had on hand approximately $70,000 of General Bronze inventory which, in order to be sold, required the purchase of a similar amount of window products from General Bronze Corporation.

9. The size of the General Bronze inventory, and the necessity for making additional purchases from General Bronze Corporation to fill out such inventory so as to make it saleable, was expected to require a year for its disposal.

10. From the testimony adduced after the remand in this case, the Court finds that it was the intention of the parties at the time the contract was executed that the first test period during which plaintiff was required to purchase $250,000 of defendant's products was the first eight months of the calendar year 1957.

11. Plaintiff could purchase and resell Ceco products in the four-county area during the years 1957 and 1958, but only on a nonexclusive basis and in direct competition with defendant.

12. Plaintiff could purchase and re-sell General Bronze window products on a nonexclusive basis in the four-county area in 1956 and 1957, but was required to pay the retail price therefor and to compete with an exclusive distributor of General Bronze which had been appointed shortly after plaintiff executed the contract with defendant.

13. In calendar year 1956, plaintiff earned a profit from the sale of products supplied by defendant, from the sale of its inventory of General Bronze products, and from the sale of such General Bronze merchandise as was purchased to "fill out" its General Bronze inventory and render it saleable, in the amount of $9,773.83.

14. Defendant has failed to offer satisfactory proof that the profit earned by plaintiff in calendar year 1956 would have been substantially less during the term of the contract remaining subsequent to the April 6, 1957 cancellation date, or that the products upon which such profit was earned were other than products covered by the terms of the contract, or that the said profit was earned on products costing plaintiff less than the $250,000 minimum figure applicable, under the contract in calendar years 1957 and 1958, or that plaintiff would have purchased products costing it less than the $250,000 minimum in calendar years 1957 and 1958.

15. Although there is no direct evidence on the point, it is a reasonable inference from the evidence introduced that subsequent to the cutoff date plaintiff could no longer purchase defendant's products for the same prices as permitted under the contract, and that plaintiff lost a clear benefit by the loss of the exclusive right to sell defendant's windows in the specified area.

16. The profit which plaintiff would reasonably have earned from the purchase and sale of defendant's windows under the said contract in that portion of calendar year 1957 remaining after the cutoff date approximated two-thirds of the profit earned by plaintiff

from sales of like products in calendar year 1956.

17. The amount computed in accordance with the method specified in finding 16 is $6,515.89.

18. The profit which plaintiff could reasonably have earned from the purchase and sale of defendant's windows under the said contract in calendar year 1958 approximates the profit earned by plaintiff from sales of like products in calendar year 1956.

19. Plaintiff has not shown that defendant's wrongful termination of the said contract resulted in damage to plaintiff other than the loss of profits which plaintiff would have earned had the contract continued in effect for its stated term.

20. A genuine controversy existed between the parties as to the amount actually due defendant by reason of the accrual of damages to plaintiff resulting from defendant's illegal and unwarranted cancellation of their written contract.

21. Plaintiff owed to the defendant the sum of $36,979.99 for window products purchased pursuant to the contract prior to the time this suit was filed on May 7, 1957, which sum was paid by plaintiff to defendant on April 10, 1959, pursuant to court order. Interest on the difference between said sum and the amount of plaintiff's claim against defendant, $20,690.27, computed at 5% per annum from the time of suit, which is approximately the time when the principal sum became due, until the date of payment, totals $1,991.44.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties to and the subject matter of this cause.

2. Defendant's cancellation of the contract for failure of plaintiff to purchase $250,000 of defendant's products during the first eight months of the calendar year 1956, was unlawful, contrary to the express terms of the contract, and contrary to the evidence showing the intention of the parties.

3. A party injured by a breach of contract is entitled to fair and just compensation commensurate with the loss sustained as a direct result of such breach. The fact of damage must be proved to be the proximate result of the wrong but the amount of damage need not be proved with mathematical certainty.

4. Damages for breach of an exclusive sales contract may be measured by the loss of prospective profits where there are any criteria by which future profits may be estimated with a reasonable degree of certainty. One recognized method of measuring prospective profits is the profit plaintiff made under the contract which was breached during a period prior to its breach.

5. Plaintiff is entitled to a judgment on its claim against defendant in the amount of $16,289.72.

6. A contract which includes such provisions concerning price as permit the ascertainment of amounts due by reason of purchases made thereunder is an "instrument of writing" within the meaning of Illinois Revised Statutes, 1961, Chapter 74, Section 2, Keystone Steel & Wire Co. v. Price Iron & Steel Co., 345 Ill.App. 305, 103 N.E.2d 143 (1952).

7. The legal rule applicable hereto warrants the deduction of the adjudicated amount of damages of $16,289.72 from the indebtedness of $36,979.99 for merchandise sold and delivered, in determining the sum upon which interest shall be computed. 47 C.J.S. Interest § 19 (1946).

8. Defendant is entitled to interest computed in accordance with Illinois Revised Statutes 1961, Chapter 74, § 2, on the sum of $20,690.27.

9. Defendant is entitled to interest computed in accordance with Conclusion 8 for the period for which such interest is demanded, that is, from the date of filing of this suit on May 7, 1957, to the date of payment on April 10, 1959.

**380**

10. Defendant is entitled to a judgment on its counterclaim against plaintiff and counter-defendant Chicago Dealers Supply Company, for interest in the amount of $1,991.45.